No. 35,159

MAE W. LEWIS, *Appellee,* v. THE INDEPENDENCE HOTELS COMPANY, *Appellant.*

(113 P. 2d 149)

Opinion filed May 10, 1941.

*Kirke C. Veeder,* of Independence, for the appellant.

*Chester Stevens,* of Independence, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to enforce the specific performance of a written contract to sell real estate. Judgment was for the plaintiff. Defendant appeals.

Judgment was entered for the plaintiff on the pleadings; hence, it will be necessary to examine them.

The real estate in question is a hotel building. The amended petition upon which the action was finally tried, after the formal allegations identifying the parties and describing the real estate, alleged that plaintiff owned an undivided two-thirds interest in the property in question, and that her sister owned an undivided one-third inter-

est; that about the 20th of August, 1930, plaintiff and her sister entered into a written contract for the sale of the property.

A copy of the contract was attached to the petition. In brief, it provided for a consideration of $40,000, and in paragraph 4 provided that the consideration was to be paid as follows: $2,050 in cash, with interest on the balance at the rate of six percent per annum, the balance to be paid in monthly installments of $350 per month, payable between the first and tenth days of each month, with a cash payment of $3,000 on August 20, 1935, and that on the above payment interest should cease. Paragraph 17 of the contract provided that to make paragraph 4 more explicit, and to provide for a method of computing interest on the unpaid balance of the purchase price, it was specifically agreed that the full consideration of $40,000 should be paid as follows: $2,050 in cash on the execution and delivery of this contract; 139 monthly installments of $350 each to be paid between the first and the tenth of each and every month, the first installment to be paid on September 1, 1930, and the 140th installment to be $235, the 140 installments aggregating $48,885, and the payment of $3,000 on August 20, 1935, making the total amount payable under the contract, including all interest, the sum of $53,935.

The petition then alleged that G. S. Holvey agreed to organize a corporation to take over the contract; that upon the completion of the payments provided for, the real estate would be conveyed to the hotel company or Holvey by warranty deed; that Holvey did form a corporation known as the Independence Hotels Company; that this corporation entered into the possession of the property and assumed the obligations of the contract; that the consideration of this contract was the payments that have heretofore been set out; that on the 28th day of January, 1931, the corporation assumed the obligation to make the payments specified, and has paid plaintiff her two-thirds proportion of each of the installments thereafter becoming due except the installment due and payable between the first and tenth days of November, 1938, which installment was due at the time the action was filed, and paid the 1931 and 1932 taxes and assessments on the property, and on February 1, 1936, defendant paid to plaintiff the sum of $1,100 in cash as her two-thirds proportion of said $3,000 cash payment, and delivered to plaintiff its note dated February 1, 1936, in the sum of $900 for the balance of her share of this payment.

The petition further alleged that plaintiff's share of the 140 install-

ment payments provided for the aggregate sum of $32,746.66, and that defendant has made ninety-eight of these payments to this plaintiff, commencing with September, 1930, and including October, 1938, at the rate of $233.33 on each installment, aggregating $22,-866.34; that forty-two payments remain to be made, of which the share of plaintiff aggregates the sum of $9,880.32, and that defendant was in default in the payment for November in the sum of $233.33; that the contract provided that defendant would promptly pay all taxes and assessments, and keep the property insured in a sum not less than $22,000.

The petition then alleged that defendant had wholly omitted to pay the taxes for the years 1933 to 1937, and that there was owing against the property the sum of $7,147.06, together with interest thereon to November 28, 1938, in the sum of $457.21, making the aggregate of taxes and interest unpaid the sum of $7,504.27; that these taxes had been due within each of the years, and defendant had been in default in payment of them; that the property had been sold each year for taxes; that defendant had neglected to advise plaintiff as to whether or not the property had been kept insured.

The petition then alleged that the Independence Hotels Company was insolvent, and was without funds with which to pay the installment of November, 1938, and the succeeding installments, or to pay the taxes due and unpaid, and that plaintiff was in danger of losing her claim on account of these taxes.

The petition then alleged that plaintiff demanded and was entitled to a strict performance of the contract, and to have each monthly installment provided for paid promptly according to the terms of the contract, and that upon default by defendant of any of the payments she was entitled to have the property sold and the proceeds impounded to satisfy these payments.

The petition alleged that plaintiff had performed every part of the obligation imposed on her by the contract, and was entitled to have specific performance of the contract decreed and offered to execute and deliver and tender a good deed in fee simple as the court might direct to thereby fully carry out the contract.

For a second cause of action the plaintiff referred to the note for $900 that had been referred to in the first cause of action, by the terms of which defendant promised to pay plaintiff seventy-four months after the first day of February, 1936, $900, with interest at the rate of six percent per annum; that about February 1, 1937, the

defendant paid $54 interest, but had neglected to pay any other interest on the note, although $54 became due on the first day of February, 1938.

The allegation as to the insolvency of defendant, the hotels company, was repeated in this cause of action, and the petition alleged that plaintiff was entitled to have this amount made a coördinate lien with the amount set forth in her first cause of action.

The third cause of action was for $54 interest which became due February 1, 1939.

For the fourth cause of action the petition alleged that defendant was, and had been for some time past, insolvent and wholly unable to pay its debts; that about the first of April, 1937, it leased the property in question to one Hunter for $450 per month for the first year, expiring in 1938, and for the monthly rental of $500 per month thereafter, and sold to Hunter all its furniture and fixtures in the hotel for a large sum, which plaintiff was unable to state; that defendant had collected a large portion of this, and had converted the proceeds to its own use, and had not applied it on the taxes and assessments on the property; that on April 25, 1938, plaintiff demanded of Holvey, president of the defendant corporation, that defendant pay the taxes and assessments then due, owing and unpaid; that Holvey informed plaintiff that it did not have the money or funds, and could not borrow the money with which to pay these taxes and assessments.

The petition further alleged that about November 21, 1938, plaintiff demanded of Holvey that defendant pay the taxes and assessments due and unpaid on the property, and that defendant again informed plaintiff that defendant was without funds, money or credits. Plaintiff further demanded on the 21st of November, 1938, that it pay the November, 1938, assessment due her and the interest on the note set out in the second cause of action, and Holvey again informed plaintiff that defendant was unable to pay. The plaintiff alleged that by reason of this failure to pay the taxes levied upon the property, they became a lien prior to any and all claims of the plaintiff thereto; that the county had purchased the property for the taxes and assessments due thereon for the years 1934, 1935, 1936, 1937 and 1938, and that her claim and title to the property had been endangered, and was liable to be lost.

The petition further alleged that plaintiff did not know what defendant had done with the furniture and fixtures of the hotel, or what

it had done with the income from the property, but alleged that defendant had omitted to apply them upon the indebtedness stated, and had permitted the property to be sold for taxes.

Plaintiff alleged that on or about the 21st day of November, 1938, the defendant had on deposit to its credit approximately the sum of $4,000, and on that date withdrew $3,700 of it, and moved it into Missouri for the purpose of preventing plaintiff from claiming it, and for the further purpose of preventing the trial court from being able to seize it on application of the plaintiff.

The plaintiff prayed judgment for the specific performance of the contract, and that she have judgment on the several causes of action, and that the court order the defendant to return this $3,700 to the jurisdiction of the court, and that the court order this to be applied upon the payment of the taxes, and that the property and assets of defendant corporation be sold, and the proceeds thereof be impounded for the purpose of making the payment of the monthly installments due the plaintiff under the contract, and for the payment of the costs of this action, including the expenses of the receivership, and that plaintiff should have such other relief as might be just and equitable, including the costs of the action. Prior to the filing of this pleading the plaintiff had filed an application for the appointment of a receiver, and one had been appointed after a hearing.

The answer of defendant was first a general denial. The answer then admitted the identification of the parties, and the execution of the contract; that Holvey was, at the time the action was filed, in possession of the property, and was the president of the defendant company. The answer further alleged that the only title of the plaintiff to the real property was a two-thirds interest, and that the remaining one-third interest owned by plaintiff's sister was purchased by defendant about January 31, 1936; that throughout the existence of the contract until the filing of this action Holvey and defendant have paid plaintiff her proportionate two-thirds share of the total monthly payments the same as though Holvey or this defendant had from the inception of this contract owned the one-third interest; that plaintiff had accepted this two-thirds payment of $350; that plaintiff's right against this property was and should by the court be restricted to this two-thirds payment, and any decree in favor of the plaintiff should be with reference only to the two-thirds interest owned by plaintiff.

The answer further alleged that since the execution of the contract .

the defendant had made large expenditures upon the property, substantially improving it, and enhancing its value, and that within six months after the execution of the contract on August 20, 1930, Holvey expended the sum of at least $10,000 in repairing and remodeling the hotel; that within the six months' period following the execution of the contract defendant had refurnished the hotel building at a cost of $18,000; that in addition to these expenditures defendant had paid to plaintiff prior to filing of this action the sum of $19,700.01 upon her two-thirds share of the total price of $40,000; that in addition thereto plaintiff had received from defendant or Holvey prior to the filing of this suit $6,533.66 of interest.

The answer further alleged that, in addition to these expenditures and payments, defendant had fully discharged the contract insofar as it related to the one-third interest of Hattie F. Conger, and alleged that on account of the large expenditures it had made it would be inequitable to forfeit the rights of defendant by a strict construction of the terms of the contract; that justice and equity under the facts and circumstances alleged required that this contract be construed and treated as—and defendant averred that it is—legally an equitable mortgage upon plaintiff's two-thirds interest in the said property; that if all, or any part of it, or interest in the property should be decreed sold, that such interest should be subject to a period of at least eighteen months' redemption in favor of defendant, and that plaintiff should be decreed to have only the rights of an equitable mortgagee in and to the said two-thirds interest in the property.

Answering the second and third causes of action, the answer admitted the execution of the note, and alleged that the actions were prematurely brought, and ought to be dismissed at the cost of plaintiff because all of the principal of it, with the interest thereon, under the terms and provisions of the note, was due at the maturity thereof, seventy-one months after February 1, 1936.

For a cross petition the defendant alleged the contract provided that the payments should be made as follows:

"1. Initial cash payment.............................. $2,050.00
2. Payment to be made August 20, 1935.............. 3,000.00
3. 139 monthly payments of $250 each................ 34,750.00
4. 140th payment ................................... 200.00

Total ...................................... $40,000.00"

The cross petition alleged that the true and accurate understanding and agreement was that the total sale price of the property was $40,000, payable as above alleged, and that the interest should be paid at the rate of $100 a month for 139 months, making a total of $13,900, and that the 140th payment should be the sum of $35, making the total of $13,935; that under the true agreement of the parties the $350 monthly payments constituted the monthly principal payment of $250, and the monthly interest payment of $100, and that the last or 100th installment of $235 covered the $200 final payment upon the agreed purchase price of the property, and $35 balance of the total agreed interest; that the drafting of the contract extended over two days, and that paragraph 4 of the contract reciting that the balance of $40,000 should be paid at the rate of six percent per annum was completed upon August 20, 1930, subsequent to the drafting of this paragraph, and prior to the final execution and signing of the contract the parties fully agreed upon the total interest payable under this contract in the sum of $13,935; that the parties had engaged a lawyer to reduce their contract to writing, and that he had partially completed this contract, including paragraph 4 thereof, prior to the parties agreeing upon the total interest of $13,935, and that after agreeing upon this interest they orally informed the lawyer of their agreement, and thereupon the last or seventeenth paragraph of this contract was drafted and completed on August 21, 1930; that by mutual inadvertence, mistake and oversight the parties to the contract failed to inform him that the total agreed interest of $13,935 was not computed according to the six percent interest rate recited in paragraph 4, and all the parties overlooked the provision in paragraph 4 of the contract relative to the balance of the purchase price drawing interest at the rate of six percent per annum; that as a result of this mutual mistake and inadvertent error and oversight of the parties, and their failure to fully inform their attorney of their contract agreement, paragraph 4 of the contract was inaccurate, and did not state the true agreement of the parties; that paragraph 4 should be reformed by striking therefrom the following words:

"With interest thereon at the rate of six percent (6%) per annum."

The cross petition alleged further that as a result of this error and mutual mistake the contract in its present form was ambiguous, and did not conform to or recite correctly the true agreement of the

parties in that to compute the interest at the rate of six percent per annum upon the unpaid balance of the purchase price of the property over a period of 140 months of this contract would result in a greater sum of interest than $13,935, the total interest agreed upon between the parties; that the allocation of interest at six percent over the term of this contract would extend the term thereof between four and five months beyond the total period of 140 months, the agreed term of the contract; that this contract as written should be reformed by striking therefrom the provisions with reference to six percent interest, thereby making it accurately recite the true agreement of the parties, which agreement defendant averred rendered the rate of interest immaterial. Defendant prayed that it be discharged without liability herein, and that it be adjudged to own absolutely in fee simple one-third of the property, together with all improvements thereon, free and clear of any claim of plaintiff; that plaintiff be adjudged to have only the rights of an equitable mortgagee in and to a two-thirds interest in this property with the improvements and appurtenances, and be restricted to such interest; that if any of this property be adjudged sold, that only plaintiff's two-thirds portion thereof be decreed sold, and that defendant be granted a period of at least eighteen months' redemption in the event of the sale of the property; that the true agreement of the parties be determined, and the contract sued on by plaintiff be reformed to recite the true agreement of the parties, and that any judgment that may be rendered herein be according to the true understanding of the parties as the same might be ascertained; that defendant have such other and further relief as the court deems equitable and just.

The plaintiff filed a reply by way of a general denial to the answer, and to the same effect answered the cross petition. It should be noted here that before the pleadings of defendant that have been heretofore referred to were filed, defendant filed a general demurrer to the petition. Plaintiff had also filed a motion and application for the appointment of a receiver. The trial court had appointed a receiver, and overruled the demurrer of the defendant. (See *Lewis v. Independence Hotels Co.*, 150 Kan. 840, 96 P. 2d 605.) The defendant appealed from the order appointing a receiver, and from the judgment overruling its demurrer to the plaintiff's amended petition. The order appointing a receiver was made January 25, 1939, and the notice of appeal was made May 4, 1939. On this account more than two months had elapsed since appointing the receiver, and this court

decided that the notice of appeal from the order appointing a receiver was filed too late.

This court, however, did consider the question as to whether the court erred in overruling the defendant's demurrer to the petition because it did not state a cause of action. This court held amongst other things that the petition did state a cause of action for the specific performance of the contract and for such incidental or varied relief as a court of equity might properly decree. The case was then sent back to the trial court where the pleadings were filed that have been heretofore noted.

When the case came on for trial plaintiff moved for judgment upon the pleadings. This motion was sustained. At the same time defendant moved to dismiss the action and this motion was overruled, hence this appeal.

The first question argued by defendant is that its motion to dismiss the action should have been sustained. The defendant bases this argument upon the provision of the contract which provided that in case the second party should default in the payment of any sums due, the first party should have a right to declare the contract terminated and to immediate possession of the property with all improvements that had been made thereon by defendant.

Defendant argues that this clause in the contract took away from plaintiff the right to file an action such as this for its specific performance and a money judgment which is as asked in this case. We do not find it necessary to examine the authorities relied on by defendant to sustain its contention as to this argument for the reason that the grounds advanced by the defendant could have been very well advanced on the demurrer which was ruled upon by this court in the former action. There can be no doubt but what the demurrer urged was a general demurrer, since the grounds upon which it was urged were that the petition did not state facts sufficient to constitute a cause of action and that plaintiff could not maintain the action.

In *Headley v. Challiss*, 15 Kan. 602, this court held:

"Where a case is brought a second time on error to this court, the first decision will be deemed the settled law of the case, and will not be made a subject of reëxamination.

"This rule extends, not merely to all questions actually presented by counsel, but to all questions existing in the record, and necessarily involved in the decision." (Syl. ¶¶ 2, 3.)

In *C. B. U. P. Rld. Co. v. Shoup*, 28 Kan. 394, this court held:

"Where a case is brought a second time on error to this court, the first decision will be deemed the settled law of the case, and will not be made the subject of reëxamination. (*Headley v. Challiss*, 15 Kan. 602.)" (Syl. ¶ 1.)

In *Crockett v. Gray*, 31 Kan. 346, 2 Pac. 809, this court held:

"Where a case is decided by this court, on proceedings in error from the district court, that decision becomes the law of the case, for all subsequent proceedings; and this rule covers not merely the points expressly considered and decided, but all questions necessarily involved in the decision." (Syl. ¶ 3.)

See, also, *Henry v. Railway Co.*, 83 Kan. 104, 109 Pac. 1005, also, *Fitzpatrick v. Bean*, 128 Kan. 473, 279 Pac. 7.

The rule stated in the above cases applies to this case and prevents defendant from rearguing on the second appeal to this court a point which could have been urged on its former appeal. It is not possible, by changing the name of. the pleading by which a matter is brought to this court from a general demurrer to a motion to dismiss, to cause this court to reëxamine the question.

Moreover, the pleadings disclose beyond any doubt that the defendant, by its voluntary act of selling the furniture and fixtures in this hotel, made it impossible for the plaintiff to take advantage of the provisions of paragraph 9 of the contract.

Defendant next argues that the court erred in entering judgment on the pleadings. To sustain this argument defendant claims there are issues of fact made by the pleadings that require a determination before a court could enter judgment. The specific issue of fact pointed out by the defendant is, first, that the answer alleged that plaintiff received from defendant the sum of $233.33, and that defendant had become absolute owner of one-third of the property, and that on this account should said property described in the petition be decreed sold, the sale should be restricted to the two-thirds interest and that plaintiff's rights be restricted to such interest or the proceeds from the sale thereof.

It is difficult to see where these allegations stated any issue of fact. The plaintiff and defendant are in agreement as to how much of this property plaintiff owned and as to the manner in which the payments were to be made. The only question is as to the legal effect to be given such facts.

The defendant next points out with reference to this argument the allegations of its cross petition wherein the fact that the interest paid appears at six percent in paragraph 4 of the contract and as a

lesser amount in paragraph 17. An examination of the pleadings with reference to this point and the contract discloses that while the cross petition stated in one place that the parties agreed upon the rate of interest and informed the scrivener that they had, the next paragraph stated that by mutual agreement the parties failed to inform the scrivener of the fact. The fact is, that taking the allegations in the most favorable light as to the oral agreement and the written agreement, the oral agreement was alleged to have been made before the written agreement and all agreements were executed and merged into the written contract. Furthermore, the contract discloses that paragraph 17 upon which defendant relies stated it was added to the contract for the purpose of making paragraph 4 more explicit.

The rule is stated in *Colt Co. v. Kocher*, 123 Kan. 286, 255 Pac. 48, as follows:

"Rule followed that in the absence of pleading and proof of some species of fraud or mutual mistake in the procuring of a party's signature to a plain and unambiguous written contract, it must be enforced according to its terms, and neither pleading nor proof of a parol understanding at variance with such terms can be considered." (Syl.)

See, also, *Parker v. Mouse*, 148 Kan. 643, 84 P. 2d 941.

There is no allegation of mutual mistake or fraud sufficient to create a question of fact as to the item of interest in this contract.

The next point argued in this connection by defendant is that, as to the second and third causes of action, its answer pleaded that the interest on this note was not due until the note was due, which was many months after the time the action was filed. This does not state a question of fact. It only states a question of law as to whether or not the fact that a payment of one year's interest when it was due by the defendant started a course of dealing so that by the conduct of the parties the note should be construed to mean that the interest was payable each year.

The petition should contain—

"A statement of the facts constituting the cause of action . . .

"A demand of the relief to which the party supposes himself entitled . . ." (G. S. 1935, 60-704.)

The answer should contain:

"A general or specific denial of each material allegation of the petition controverted by the defendant.

"A statement of any new matter constituting a defense . . . or a right to relief concerning the subject of the action, in ordinary and concise language, and without repetition.

"When relief is sought, the nature of the relief to which the defendant supposes himself entitled . . ." (G. S. 1935, 60-710.)

Arguments and conclusions of law have no place in the pleadings.

Succinctly stated, the petition in this case pleaded the execution, delivery of the contract, the entry of defendant into possession, the default of the defendant and the demand for relief.

The answer was a general denial and an admission of the execution and delivery of the contract and the entry of the defendant into possession and its lease to Hunter; an argument about the ownership of the property and a claim that the plaintiff had a limited lien only; a statement of the expenditure of large sums of money in improving the hotel property; a statement of the amount which defendant claimed it had paid the plaintiff which corresponded with the amount claimed by the plaintiff to have been paid; an argument as to the inequity and injustice of the contract and that the plaintiff should be limited to an equitable mortgage; an argument that the note showed on its face that the interest was not due.

In its cross petition defendant alleged an understanding as to what it claimed the understanding of the parties was with reference to the interest charge; that the parties understood their contract, but failed to inform the attorney who drew it of what they contemplated, and a statement with reference to the payments that had been made under the contract, which does not dispute the claim made by plaintiff. The conclusions of law stated in the pleadings are no part of the pleading and may be treated as surplusage. They do not state a cause of action nor do they state a defense.

See *Kansas Gas & Electric Co. v. Public Service Com.*, 122 Kan. 462, 251 Pac. 1097, and *McIntyre v. Surety Co.*, 97 Kan. 629, 156 Pac. 690.

It is true that the answer in this case pleaded a general denial. However, such a statement in a pleading does not create an issue of fact when the later statements in the pleadings are such as to agree with the facts of the petition. (See *Dickinson County Hospital Co. v. Kessinger*, 128 Kan. 576, 279 Pac. 7, also *McBroom v. Wilgus*, 108 Kan. 14, 193 Pac. 1068.)

· Defendant next argues that the court erred in entering the judgment which it did enter because the decree and judgment were inequitable and contrary to law. This makes it necessary to make a brief examination of the decree. It found the contract as was alleged. The initial cash payment of $2,050 and the making of 98

payments; that defendant defaulted as to the November, 1938, payment and that from that date until the day of the decree installments in the amount of $5,925.73 were due, which sum drew interest at the rate of six percent until paid; that time was of the essence of the contract and plaintiff was entitled to the specific performance; that defendant should be ordered to pay to plaintiff the above-stated overdue installments of $5,925.73 and to pay all taxes and penalties incurred and all future taxes and assessments in default at the time of the decree in the amount of $7,500; that defendant had breached the contract by not making these payments and ordered that if a payment of these overdue installments and the future installments and the taxes be not made before December 15, 1940—the date of the decree being October 14, 1940—that the receiver proceed to sell the property at a receiver's sale to the highest bidder; that the receiver should report the sale within ten days for approval or rejection by the court and authorized the plaintiff to bid at the sale and to take credit on her bid for overdue installments on the condition that her bid should equal or exceed the amount plus taxes and assessments. The proceeds of the sale were directed to the payment of taxes and assessments, the cost of the action; $5,923.73 to the plaintiff with interest and future installments to become due under the contract. The district court found the execution and delivery of the lease between the defendant and Hunter and of the payment of two-thirds of the cash payment of $3,000 of August 20, 1935, by the payment of $1,100 in cash and a $900 note dated February 1, 1936, on which note on February 1, 1937, defendant paid $54 interest, being interest for one year from February 1, 1936, and thereby construed the date for the payment of interest as being annually and the refusal of defendant thereafter to pay the interest and that plaintiff was entitled to judgment for the interest yearly; that the defendant was adjudged insolvent on the 25th day of January, 1939, and a receiver had been appointed. It directed the receiver to be in possession of the property until the sale of it, and retain jurisdiction of the case, and the taxes and costs and overdue installments were made liens upon the proceeds of the sale. There was no period of redemption provided for in this decree. The first argument with reference to the inequity of this decree made by the defendant is that it was entitled to an eighteen months' period of redemption. Defendant argues that since the court held this contract to be a contract which created an absolute obligation to pay, and gave a judgment for the

amount required to be paid, the defendant was entitled to a period of redemption. In this connection the defendant points out it has paid plaintiff over $25,000 as equity in this property, and made improvements at a great deal of expense. At the outset, it should be noted that this court held on the former appeal that the petition stated a cause of action for the specific performance of a contract, with such other incidental relief as a court of equity might properly decree. (See *Lewis v. Independence Hotels Co.*, supra.) This is clearly an action for equitable relief which equitable principles should control.

This court has held under certain circumstances that contracts for the sale of real estate were equitable mortgages and has required that they be foreclosed just as mortgages are foreclosed and the defendant purchaser given a right of redemption. This rule has been laid down, however, as the name implies, from the application to principles of equity, and each case was decided upon the facts of that particular case. (See *Heard v. Gephart*, 118 Kan. 82, 233 Pac. 1044, also *Coryell v. Hardy*, 144 Kan. 194, 58 P. 2d 1151.) Here the contract which the plaintiff seeks to enforce is an unambiguous contract for the sale of real estate. There can be no doubt as to what the defendant promised to pay and that time is of the essence. The defendant has permitted the property to be sold for taxes for several years so that now there is a lien for taxes in the amount of about $12,000. Soon after it went into possession of the property it sold the furniture and fixtures of the hotel for a substantial sum. It entered into a contract with one Hunter to lease the hotel for a period of ten years at a substantial sum per month. This action of selling the furniture and fixtures to Hunter and leasing the hotel to him made it possible for him to cancel his lease and remove the furniture and fixtures, which would have left the plaintiff in possession, with an empty hotel building on her hands, with no furniture in it and no tenant. These circumstances do not impress this court as constituting any equitable consideration in favor of the defendant here. Defendant argues vigorously with reference to the fact that it has already bought the one-third interest owned by the sister of plaintiff. This fact casts some doubt upon the equitable conduct of defendant rather than being any help to it, in view of the fact that it does not state what consideration it paid the sister of plaintiff for this one-third interest, and in view of the claim that is made by defendant that its ownership of this one-third interest should pre-

vent the plaintiff from forfeiting the contract and taking possession of the hotel. It should be noted in this connection that defendant argues that the plaintiff was bound to proceed under paragraph 9 of the contract and to forfeit it and take possession. It is noteworthy, too, that defendant made no tender of the amount necessary to pay the back taxes that are a/ lien upon the property or to pay the accumulated installment payments which are now in arrears. There is no indication in the pleadings of defendant that it would be able to take advantage of a period of redemption should it be granted one. Furthermore, the decree of the court allowed defendant sixty days in which to pay up the back installments and the accumulated ·taxes before the property should be sold. There is no indication in the record that this was an unreasonable time or that the defendant evinced any intention to take advantage of it.

Under all these facts and circumstances, we hold that this was not an equitable mortgage and the court was correct in denying the defendant the eighteen months' period of redemption.

What has been said with reference to the argument that this was an equitable mortgage and the defendant was entitled to the eighteen months' period of redemption is an answer to the argument of defendant that the decree was inequitable and unreasonable in other respects.

The next argument made by defendant is that the trial court erred in appointing a receiver. The receiver was appointed sometime before the consideration of the former appeal. Defendant attempted to appeal from that order, but was too late—hence, this court did not consider it. The defendant had a right, however, on appeal from the final judgment, to have the propriety of the order appointing the receiver reviewed. We shall consider that question now.

The fourth cause of action contained the allegations for the appointment of a receiver. Briefly stated, they were that the defendant was insolvent; that it had collected rents and converted them to its own use and had not applied them to the payment of taxes; that the president of the corporation made the same statement on November 21, 1938, with reference to the taxes and installments and the interest on the note; that due to the nonpayment of taxes for the years 1934 and succeeding years, plaintiff's title to the property was endangered; that plaintiff did not know what defendant did with the $6,000 or $7,000 received from the sale of the furniture. but alleged that it was not applied to the payment of taxes; that on

November 21, 1938, the defendant withdrew about $3,800 from its account in the Independence bank and transferred it to Missouri to prevent the trial court from obtaining jurisdiction over it and compelling its application to the payment of the taxes.

To this application the defendant filed an answer which was in effect a general denial. There was an extended hearing on this application. Without going into the evidence introduced at this hearing in detail it may be stated that there was ample evidence that the defendant had refused to pay its taxes since 1934 and that they amounted at the time of the hearing to about $7,500; that it took $6,000 from the sale of the furniture and did not apply it on the taxes; that it withdrew $3,800 from the bank and took it to Missouri and refused to turn it over to the receiver; that its president told plaintiff it could not carry out the contract because it had no funds and suggested that the corporation might take bankruptcy because of its financial condition. There was evidence as to the general manner in which the business of the corporation was conducted so that the trial court was justified in scrutinizing the acts of the corporation and the testimony of its officers very carefully.

G. S. 1935, 60-1201, states the grounds upon which a receiver may be appointed. The section provides, in part, as follows:

"*First.* In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or of any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured.

"*Fifth.* In the cases provided in this code and by special statutes when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights.

"*Sixth.* In all other cases where receivers have heretofore been appointed by the usages of the courts of equity."

The plaintiff in this case is interested in the property, and if the tenant should have moved out or the county had eventually sold the property for taxes she would have been in danger of losing it.

We think there was ample evidence here that the defendant was insolvent or in imminent danger of insolvency. The statements of the president of the company were sufficient to warrant the trial court in reaching such a conclusion.

Equity has always permitted the appointment of a receiver whenever the property is threatened with loss. (See 23 R. C. L. 18.)

In *State Bank v. Elevator and Mercantile Co.*, 116 Kan. 550, 227 Pac. 257, this court held:

"A court has jurisdiction to appoint a receiver in an action on promissory notes where a verified application for such appointment alleges defendant to be insolvent and that there is imminent danger of plaintiff's claim being lost."

In the course of the opinion this court said:

"Under the circumstances, the appointment of a receiver to preserve the assets of the defendant for the benefit of all the creditors was proper. The allegations of plaintiff's application that the defendant was insolvent were sufficient to give the court jurisdiction to make the appointment." (p. 551.)

In *Huston v. Cox*, 103 Kan. 73, 172 Pac. 992, in affirming an order appointing a receiver, this court said:

"While the parties are merely cotenants of an incorporeal hereditament, the evidence was that they have reached an *impasse*. They cannot agree with respect to their rights, or the management of the property, or a disposition of it. There is no reason why a court of equity should not solve the situation; and meanwhile a receiver to hold the lease, protect the property, and perform other functions, is a proper and justifiable auxiliary." (p. 76.)

See, also, *Nelson v. United Elevators Co.*, 115 Kan. 567, 223 Pac. 814, also *Childress v. Fox Mining Co.*, 130 Kan. 402, 286 Pac. 262.

The appointment of a receiver rests ordinarily in the sound discretion of the trial court. See 53 C. J. 34, also *Watkins v. National Bank*, 51 Kan. 254, 32 Pac. 914; *Fluker v. City Rly. Co.*, 48 Kan. 577, 30 Pac. 18. In this action the trial court heard all the evidence and exercised its discretion by appointing a receiver. We have concluded that this action was warranted by the record.

The judgment of the trial court is affirmed.