No. 25,758.

R. C. Mason, *Appellant*, v. Harold McGugin, *Appellee.*

SYLLABUS BY THE COURT.

Contracts—*Illegal or Unethical Object—Public Policy.* A written contract which was the basis of a cause of action, and the matters of elucidation and inducement pertaining thereto, set out in the petition, considered, and held to offend against certain general principles of public policy stated in the opinion, and that no recovery can be had thereon.

Appeal from Montgomery district court; Joseph W. Holdren, judge. Opinion filed June 6, 1925. Affirmed.

*T. H. Stanford, Lester G. Seacat, Charles Seacat,* all of Independence, *W. D. Humphrey,* and *W. J. Campbell,* both of Tulsa, Okla., for the appellant.

*Walter S. Keith, Charles Bucher,* and *Barney Bucher,* all of Coffeyville, for the appellee.

The opinion of the court was delivered by

Dawson, J.:    This was an action on the following contract:

"Agreement.

"This agreement, made by and between R. C. Mason, of Tulsa, Oklahoma, and Harold McGugin, of Coffeyville, Kansas, witnesseth:

."That whereas, R. C. Mason is involved in a lawsuit in the federal court for the eastern district of the state of Oklahoma, in a suit over what is known as the Mondy Yargee lease in the Cushing field, and Harold McGugin is one of the attorneys for Mrs. Jackson Barnett.

"Now, for and in consideration of the agreement of said R. C. Mason to give to said Harold McGugin ten thousand ($10,000) dollars out of moneys which he may receive from said Yargee lease, the said Harold McGugin agrees to give to said R. C. Mason ten thousand ($10,000) dollars out of moneys which he may receive in representing the said Mrs. Jackson Barnett; provided, that the said R. C. Mason shall first receive twenty-five thousand ($25,000) dollars from said Yargee lease before he is obliged to give the said Harold McGugin this ten thousand ($10,000) dollars, and the said Harold McGugin is to receive twenty-five thousand ($25,000) dollars from said Mrs. Jackson Barnett before he is obliged to give said R. C. Mason ten thousand ($10,000) dollars.

"Signed, executed and delivered at Coffeyville, Montgomery county, Kansas, this 8th day of April, 1920.

"(Signed)    R. C. Mason,
"(Signed)    Harold McGugin."

In his petition the plaintiff Mason alleged due execution of this contract and that he stood ready and willing to perform his part of

it if and when the contingency upon which his liability depends should transpire. He also alleged that the contingency upon which the liability of McGugin depends has already transpired, that Mc-Gugin has already received from Mrs. Jackson Barnett far in excess of $25,000, and consequently that the sum of $10,000 is due and owing to plaintiff from McGugin under the contract. As matter of inducement and elucidation of his cause of action, plaintiff pleaded:

"The plaintiff, further pleading, says that Mrs. Jackson Barnett employed the defendant Harold McGugin to represent her at or about the time she was married to her present husband, viz., Jackson Barnett; that soon after said marriage, Mrs. Jackson Barnett counseled with said defendant concerning the actual acquisition on her part of a portion of the wealth and estate of her husband; that her husband was then and is now a man of considerable wealth, and it was contemplated that she, the said Mrs. Jackson Barnett, might obtain for herself, and would endeavor so to do, a sum in excess of five hundred thousand ($500,000) dollars; that it was agreed by and between Mrs. Jackson Barnett and Harold McGugin that he, the said McGugin, would assist said Mrs. Jackson Barnett in obtaining a portion of the wealth and estate of her said husband; that it was further agreed by and between Mrs. Jackson Barnett and the said Harold McGugin that she, the said Mrs. Jackson Barnett, would pay to him, the said Harold McGugin, the sum of one hundred fifty thousand ($150,000) dollars out of the first five hundred thousand ($500,000) dollars she, the said Mrs. Jackson Barnett, received from her husband. The plaintiff states that some time in the early part of the year 1923 . . . the said Mrs. Jackson Barnett did receive of and from her husband, Jackson Barnett, . . . the sum of five hundred fifty-five thousand ($555,000) dollars, but that only three hundred fifty-five thousand ($355,000) dollars of the same was paid to her in her own right, the remaining two hundred thousand ($200,000) dollars being turned to her as a trust fund, to be held to guarantee the maintenance of her husband, and finally to be hers absolutely upon the death of her husband. The plaintiff states that when the said Mrs. Jackson Barnett received the money aforesaid, an adjustment was had between herself and the defendant Harold McGugin, whereby the defendant received the sum of one hundred thousand ($100,000) dollars; that this adjustment was had some time in the early part of 1923, . . . a sum equal to and in excess of the twenty-five thousand ($25,000) dollars mentioned in the aforesaid contract."

Defendant filed a demurrer to plaintiff's petition, which raised the question whether judicial tribunals established for the adjudication of the lawful, proper and serious concerns of men should lay hold of such a contract as the one here involved and enforce it according to its terms.

The trial court in effect answered that question in the negative, sustained the demurrer, and the question is here for review.

· This proposition takes us back to the rudiments of the law of

contracts, one of which is that to be enforceable a contract must contain no indispensable element of illegality or of offense against good morals or public policy. Of course the courts must not be too finical about the enforcement of contracts which are merely mercenary, improvident or whimsical; or in which corrupt or sinister incidents are only remotely inferable (18 L. R. A., n. s., 1161 and note), but the attitude of the judiciary has always been distinctly reserved or actively hostile towards contracts which savored of barratry, contracts where the parties seem to have had in mind some project to defraud other individuals, contracts tending to pervert the professional standards of attorneys, or to encourage litigation, or to meddle with marital and family relations, and the like. All this is elaborately treated in cyclopedias and textbooks and by law writers. (Anson on Contracts [4th Am. ed.], 282 *et seq.;* Bishop on Contracts [2d ed.], § 467 *et seq.;* 3 Williston on Contracts, § 1678 *et seq.,* § 1714 *et seq.;* 6 R. C. L. 681, 693 *et seq.;* 13 C. J. 410 *et seq.*) It has been held that a contract of a mercantile agency to share in the professional fees of an attorney is nonenforceable. (*Buxton v. Lietz,* 136 N. Y. Supp. 829, 139 N. Y. Supp. 46.) An attorney's contract to share his fee with a layman who procured the attorney's employment is void as against public policy. (*Alpers v. Hunt,* 86 Cal. 78, 21 A. S. R. 17, 9 L. R. A. 483; *Langdon v. Conlin,* 67 Neb. 243, 108 A. S. R. 640, 60 L. R. A. 429; *Moore v. Hyde,* 39 S. Dak. 196.) Some of these cases depend on statutes, but such statutes are mostly declarations of recognized general principles of public policy and of professional ethics. Changing standards of propriety alter the attitude of courts towards certain classes of contracts. Thus contracts in the nature of wagers on matters not inherently vicious were valid a generation or two ago; they are probably all invalid now. (6 R. C. L. 777.) But even at common law wagering contracts which would wound the feelings of third parties were not recoverable. (Note in 18 L. R. A. 859 *et seq.*) In 3 Bouvier's (3d ed.), 3416, it is said:

"Wagers as to the sex of an individual (Cowp. 729), or whether an unmarried woman had borne or would have a child (4 Camp. 152), are illegal, as necessarily leading to painful and indecent considerations. Every bet about the age, or height, or weight, or wealth, or circumstances, or situation of any person, is illegal; and this, whether the subject of the bet be man, woman or child, married or single, native or foreigner, to this country or abroad. (*Phillips v. Ives,* 1 Rawle [Pa.] 42.)"

So, too, marriage brokerage contracts are not enforceable because of their grossly mercenary attitude towards the most sacred institution of human society (6 R. C. L. 769), and the same vitiating element inheres in all contracts whose manifest tendency is evil (6 R. C. L. 720), as where they would encourage a breach of that affectionate respect and loyalty which should exist between husband and wife.

How do these general principles affect the contract here presented for determination? It was conceded in oral argument that Mason, the plaintiff, is not a lawyer; at least his petition does not so allege, so it cannot be inferred that he might have a legitimate interest as associate attorney in McGugin's professional compensation. If plaintiff was an attorney and held any theory that such a status would have strengthened his cause of action, he should have pleaded the fact. (Note in 2 Ann. Cas. 836.)

Neither the petition nor the contract discloses what, if any, interest plaintiff had in the Monday Yargee lease which was the subject of litigation in the federal court in Oklahoma. No actual or contingent proprietary interest is alleged. It is doubtful if any consideration issued from plaintiff to McGugin in return for the latter's obligation here sued on.

But let us pass to the main point. Plaintiff's petition narrates a strange story, which is only to be taken as true for the purpose of testing its sufficiency on demurrer; and so far as Mrs. Jackson Barnett is concerned, no invidious implications should be drawn against her for anything that appears in the petition, for the reason that she can have no opportunity in this lawsuit to challenge or deny the plaintiff's allegations. (*Howell v. Herriff*, 87 Kan. 389, 124 Pac. 168.) In *Busley v. Busley*, 115 Kan. 725, 224 Pac. 922, it was said:

"In some . . . sorts of litigation . . . the good name and reputation of third parties are often dragged in and smirched without the slightest opportunity on their behalf to challenge or deny the calumny."

The petition, in substance, alleges that plaintiff is entitled to $10,000 from McGugin because a certain contingency named in the contract making McGugin's liability therefor absolute had transpired. That is to say, Mrs. Jackson Barnett, the bride of Jackson Barnett—known informally if not judicially by this court and by the trial court, as well as by the general public, to be an elderly Indian who suddenly became fabulously wealthy through the discovery of oil on some otherwise worthless lands of his—with the

professional advice of lawyer McGugin, upon the consummation of her marriage to Barnett, promptly and designedly set about certain unwifely maneuvers and stratagems against her husband, and with such success that she speedily despoiled him of a half a million dollars or more, which sum she has shared with McGugin to the extent of $200,000. And so the plaintiff in effect says: "These two confederates having succeeded beyond their most sanguine expectations, I, the plaintiff, who by contract with McGugin was to share in the success of their enterprise, demand my agreed share of the spoil!"

The petition fairly shows the money which was to be shared with plaintiff was to be tainted money. The whole scheme on which the contract rested was highly unethical; it violated the rudiments of good morals and fair dealing. By his own allegations, plaintiff's claim is founded upon the alleged success of a gross offense against marital duty and loyalty of a wife who was coached thereto by plaintiff's obligor.

Within the general principles of law outlined above, such a contract as that here presented cannot be recovered upon in any self-respecting court of justice.

The judgment is affirmed.