No. 36,274

THE GEIMAN-HERTHEL FURNITURE COMPANY, FRANKLIN L. HERTHEL, VELMA HERTHEL, FRANKLIN L. HERTHEL, Executor of the Last Will and Testament of Addie B. Herthel, Deceased, *Appellants,* v. A. I. GEIMAN and HELEN GEIMAN, *Appellees.*

(161 P. 2d 504)

Opinion filed August 4, 1945.

*Roy C. Davis,* of Hutchinson, argued the cause, and *Warren H. White, Frank S. Hodge, William H. Vernon, Eugene A. White,* all of Hutchinson, *William Osmond, T. B. Kelley* and *Fred Conner,* all of Great Bend, were on the briefs for the appellants.

*Oscar Ostrum,* of Russell, argued the cause, and *R. C. Russell, John Henry Lewis* and *Isabel Obee,* all of Great Bend, were on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action by the president and two other stockholders of a domestic corporation against the manager and

one other stockholder—there being a total of six stockholders—to be declared to have stockholders' voting control of the corporation, and in the alternative to have a receiver appointed and the corporation liquidated. The third stockholder held only one share of each common and preferred stock. She was out of the state and was not made a party to the action.

The plaintiffs held the majority of the preferred stock and contended it carried voting rights which, if recognized, would give them stockholders' control in conjunction with their common stock. They also sought to cancel 150 shares of common stock held by the defendant manager on the ground it was obtained by fraud and without consideration. Plaintiffs further sought an accounting from the defendant manager and the appointment of a receiver on the grounds internal dissension was defeating the objects of the corporation and that corporate assets were being wasted and dissipated by unlawful and fraudulent acts of the defendant manager.

Plaintiffs were denied the relief sought and have appealed. The corporate entity was also named as a party plaintiff and it likewise has appealed. The record before us discloses no essential function which it has to perform as a party in this particular action, the controverted issues being entirely between the preferred and common stockholders rather than between the corporation and either class of stockholders.

Before considering the merits of appellants' complaints we are confronted with appellees' motion to dismiss the appeal. The first three grounds of the motion are predicated upon the theory of acquiescence in or acceptance of benefits under the judgment rendered. The motion is based upon the grounds: (1) The appellant, Franklin L. Herthel, president of the corporation, subsequent to the filing of findings of fact and conclusions of law on June 29, 1944, accepted the benefits of a salary fixed by the judgment; (2) all appellants are acquiescing in the judgment which required the manager to return bonuses to the corporation in the sum of $1,425 which he had taken without authority; (3) appellants are acquiescing in that part of the judgment favorable to them which determined a stockholders and directors' meeting on February 16, 1943, was valid; and (4) subsequent to final judgment the board of directors passed a resolution to dismiss the instant appeal insofar as the corporation itself was concerned.

The contentions will be treated in the order stated. The salary

was paid to June 1, 1944, by agreement of the parties made during the pendency of the action. The president continued to draw the increased salary for the months of June, July and August, 1944. We find nothing in the record to indicate his salary as fixed by the agreement of the parties and the judgment was to be discontinued or reduced. Final judgment, following the motion for new trial, was not rendered until October 6, 1944. Moreover, a dismissal of the appeal on the first ground would not preclude an appeal by the other appellants on all substantive questions involved. Touching the second ground of the motion we find nothing in the record to indicate appellee, the manager, complied with that part of the judgment which required him to return the bonuses he had wrongfully taken. It follows neither the appellant stockholders nor the corporation has yet accepted benefits pursuant to that part of the judgment. With respect to the third ground we find no action was taken pursuant to the stockholders and directors' meeting on February 16, 1943, by which appellants or either of them benefited. Nor is the fourth ground of the motion valid. The subsequent action of the board of directors to dismiss the appeal insofar as the corporate entity is concerned could in nowise affect the right of the plaintiff stockholders to appeal and to obtain a review of all rulings which affect their individual rights as stockholders. Moreover, only appellees participated in that subsequent stockholders and directors' meeting and the subject of their voting rights is an issue in this appeal. We think the motion to dismiss the appeal should be denied.

The trial court made exceedingly careful and extensive findings covering the facts leading up to and including the organization of the corporation, the issuance and delivery of all stock and the conduct of the officers of the corporation. The findings of fact and conclusions of law are set out in full, appended to and made a part of this opinion. They are essential to a clear understanding of the facts upon which the court's rulings were made. With respect to the relief sought by appellants the trial court concluded: Appellants were estopped (1) to deny the validity of the 150 shares of common stock owned by appellee A. I. Geiman (finding 9) ; and (2) from claiming their preferred stock carried voting rights (finding 3) ; (3) appellees acquiesced in the stockholders and directors' meeting of February 16, 1943, and were estopped to deny its validity (finding 4) ; and (4) the evidence disclosed the corporation

was solvent, not in danger of becoming insolvent and a receiver should not be appointed. (Findings 21, 22.)

Appellants complain concerning the above conclusions 1, 2 and 4. The factual basis for conclusions 1 and 2 is found in the original agreement between the president, Franklin Herthel, and the manager, A. I. Geiman, made prior to the application for a charter of the contemplated corporation and in the subsequent conduct of appellants. Facts which support the trial court's findings and conclusion of estoppel as to each of those subjects in substance are:

Appellee Geiman prior to the formation of the new corporation in 1936 was operating an electrical business of his own in the town of Hoisington; it was being operated at a profit; in addition to the stock and equipment in that business Geiman had various outstanding contracts for electrical work; he was a licensed mortician and embalmer and desired to incorporate a furniture business in connection with which he would use his experience as a mortician and embalmer; in order to obtain additional capital and create a wider interest in the new corporation he contemplated selling stock to people residing in Hoisington and in various other towns; the appellant Herthel had recently finished college and had done some work for Geiman as a salesman in the electrical business; Herthel had inherited some money and he and his mother were anxious he should become established in a business which would also give him a permanent job; Geiman and the Herthels discussed the subject of Herthel's investment in the new corporation; Geiman, however, advised the Herthels that if he, Geiman, was putting his present business and its good will into the new corporation he would insist upon an arrangement whereby he would be in control of the management and operation of the new business; he also advised the Herthels he could not guarantee Franklin a permanent job; he told them that would depend upon whether Franklin's services would prove satisfactory to the corporation; upon being so advised the Herthels refused to consider the deal any further; however, within approximately a week or ten days Herthel returned and advised Geiman they had decided to go ahead with the deal; the new business was incorporated with a capital stock of $15,000; there were 150 shares of preferred stock at $100 per share and 300 shares of common stock of no par value; with each share of preferred stock sold there was issued one share of common stock; the shares of stock issued to each of the six stockholders of the corporation are

shown in finding No. 1; Herthel was made president and Geiman general manager of the corporation; 150 shares of common stock were issued to Geiman in consideration of the good will of his former business, which was located adjacent to the new business; such common stock together with other common stock Geiman received for each share of preferred stock purchased gave him control of the stockholders' meetings if the preferred stock carried no voting rights; the charter provided for six directors and the six stockholders were therefore the directors; into each certificate of preferred stock they inserted the following provision:

"Holders of the common stock reserve the sole right to control the management of the corporation and all voting rights as specified in the By-laws of the corporation and said right so as to control such corporation shall not be abridged by any subsequently enacted By-law."

Herthel knew of the provision in the preferred stock certificates and with that knowledge signed all such stock certificates issued to himself and the other stockholders; in keeping with the original agreement that Geiman should control the management of the corporation Herthel acquired and held his position as president and drew his salary as president for seven years; he obtained a four percent annual dividend on his preferred stock; he also accepted dividends which redeemed his preferred stock to the extent of ten percent; when intolerable dissension arose between him and Geiman he sought by the instant action to repudiate the original deal and to cancel the certificate for the 150 shares of common stock which he had signed and delivered to Geiman; Herthel also sought to repudiate the original agreement whereby the preferred stock carried no voting rights and sought to obtain such voting rights in order that he, instead of Geiman, could control the stockholders' meetings; this relief was sought on the alleged ground he had been defrauded by Geiman in the original deal in 1936.

The trial court found against appellants on the issue of fraud and, as previously indicated, held they were estopped by their knowledge and conduct to claim voting rights for the preferred stock and were estopped to claim the 150 shares of common stock issued to Geiman were invalid.

Touching the subject of appellants' right to vote the preferred stock they direct our attention to sections of the bylaws which provided: ". . . each stockholder shall be entitled to cast one vote for each share of stock held in his name. . . ." and that

amendment to the bylaws ". . . may be made by a vote of a majority of all stock issued and outstanding." They also remind us the law provided that in all elections for directors or trustees each stockholder had the right to vote. (G. S. 1935, 17-235.)

The judgment of the trial court is not based upon the theory the original contract and the provision in the preferred stock certificates, which denied preferred stockholders the right to vote, constituted an enforceable executory contract. The parties had operated for approximately seven years under the agreement which gave Geiman the right to manage and control the corporate affairs. The judgment of the trial court is grounded on the doctrine of estoppel. The court concluded appellants could not knowingly enter into a contract intended to place the control of the corporation in the hands of Geiman, accept the benefits of his management and control for approximately seven years and thereafter, in equity and good conscience, divest him of such control and acquire it for themselves.

There was no change, prior to trial, in the original stock ownership. The trial court found against appellants on their charge of fraud. Notwithstanding the statutory and bylaw provisions on the subject of voting rights appellants knowingly entered into the agreement whereby the common stock was to have stockholders' control of the corporation. They expressly provided accordingly in the preferred stock certificates which Herthel signed and delivered to himself and others. That the general doctrine of estoppel is applicable to stockholders who bring an action, equitable in character, cannot be doubted. (*Fox v. Kansas Farmers' Union Royalty Co.*, 157 Kan. 297, 307, 139 P. 2d 815.)

Appellants offered to return none of the benefits they had obtained over a period of approximately seven years from the transactions they now claim to be illegal. In 18 C. J. S., Corporations, § 257 (c) it is said:

"Acquiescence, laches, or retention of benefit, will estop the corporation, stockholders, or purchasers from objecting to the validity of an issue of preferred stock on the ground that it was unauthorized, particularly where the rights of third parties have intervened. This is so, although in the light of what has subsequently transpired the transaction may appear to have been exceedingly unconscionable; for an unconscionable arrangement will not be disturbed where there has been a ratification of it with knowledge of all its bearing, if time has been had for consideration. By the weight of authority persons who participate in an unauthorized or illegal issue of preferred stock, or who with knowledge of the facts take the same and receive the benefits thereof in the way of dividends, participation in control of the corporation,

etc., will be estopped to deny the validity of the issue to the prejudice of creditors or other stockholders. So, unanimous consent or acquiescence of the stockholders may estop them and the corporation." (p. 720.)

"As is indicated in § 257 infra, even though the issuing of preferential shares may be illegal or irregular under the rules stated in the preceding sections, yet objection thereto may be precluded by acquiescence, and by the operation of the principle of estoppel with respect to those who are entitled to question the transaction. Objections to particular provisions of the contract under which preferred stock is issued may be similarly precluded." (18 C. J. S., Corporations, § 225, p. 654.)

See, also, 13 Am. Jur., Corporations, § 469; 12 Am. Jur., Contracts, § 213; *Mason v. McGugin*, 118 Kan. 663, 236 Pac. 845.

In the instant case there was no attempt by the Herthels to amend the bylaws. There was such an attempt by the Geimans at a meeting the Herthels did not attend but the court ruled that meeting was invalid. That ruling is not an issue here. The issue presented here pertains to the management and control of the business affairs of the corporation. On that point we fail to understand the significance or importance of the right, or absence of the right, of any stockholder to vote at a stockholders' meeting in this particular case under the stock ownership as it existed when this action was commenced and tried. Stockholders do not have the general management and control of the affairs of a corporation. That is the function of directors or trustees (G. S. 1935, 17-608) whom the stockholders had the right to elect (G. S. 1935, 17-235) and did elect for that particular purpose. As previously stated there had been no change in the original stock ownership. The bylaws provided for six directors. There were only six stockholders. All six stockholders at a valid meeting elected themselves directors. They therefore were deprived of no voting rights as stockholders. Action at a directors' meeting is determined by a majority vote of the directors and not on the basis of stock ownership. It follows that under the facts in this particular case appellants were deprived of no rights as stockholders.

Did the district court err in refusing to cancel Geiman's 150 shares of common stock? In addition to the denial of that relief on the ground of estoppel appellants were not entitled to that relief for another reason. There is ample testimony to support the findings against appellants on the subject of fraud. Moreover, this action was not commenced until 1943. If there had been fraud in the original 1936 transaction an action to cancel the stock on that ground was barred within two years. (G. S. 1935, 60-306,

*Third.*) If the action to cancel the stock was brought on the ground the original contract violated the speculative securities act the action was barred, assuming the provisions of that act are available to the Herthels under the facts in this case, within the special three-year period of limitation fixed by that act. (*Terrill v. Hoyt,* 149 Kan. 51, 54, 87 P. 2d 238, and other cases therein cited.)

Should a receiver have been appointed in view of additional findings of the court amply supported by the record?

Herthel, the president, and Geiman, the general manager, of the corporation were both active in the daily affairs of the corporation. Dissension between them began within approximately a year after the formation of the corporation. It grew progressively worse. At the beginning of the trial the court refused Herthel's application for the appointment of a receiver, hoping the men would reconcile their differences. At the conclusion of the trial the court concluded its hope was futile. It found these men were so antagonistic, selfish and offensive that they had not in the past and would not in the future compose their differences. They showed no inclination to want to get along together. For example, Herthel had ordered merchandise he deemed necessary for the business and Geiman cancelled the order. Numerous other circumstances disclose they refused to work together for the corporate welfare. Neither of them recognized the fiduciary relationship to the corporation. Each of them was more concerned with his selfish interest than with the welfare of the business. Their attitude and conduct were harmfully affecting the business. (Finding 9.) Herthel insisted upon controlling the corporation by reason of his investment therein. Geiman insisted upon controlling it because of his position as general manager and his greater practical experience. At the stockholders and directors' meeting of February 16, 1943, a climax was reached. Herthel insisted upon getting his money out of the corporation irrespective of the disastrous effects such action would have on the business. One director was absent. The votes of the Herthels controlled the directors' meeting. The following action was taken:

"Motion was made by Velma Herthel that the said Corp. pay off the preferred stock with money from the firm or by mortgages by use of capital on hand or by borrowing in any manner necessary the money needed to retire the preferred stock. Motion seconded by Addie Herthel. 10% of this to be paid by March 1st & balance within 6 months. Motion duly made & carried by vote of 3-2."

The above action violated the bylaws of the corporation which provided the preferred stock should be retired out of the net profits of the corporation. There was testimony of witnesses that such violation of the bylaws was called to the attention of appellants at that meeting and that appellants were advised such action, if executed, would wreck the corporation and that they replied they didn't care. Herthel, the president, is purported to have said: "Well, we don't care what happens to the business, all we want is our money out of it." Geiman offered to try to raise the money to pay the Herthels for their investment but the above motion was nevertheless passed.

With respect to the meeting of February 16, 1943, the trial court concluded all stockholders were estopped to deny the validity of that meeting. In order to avoid any possible misunderstanding we pause to state that if the court meant thereby to hold appellees were estopped to challenge the validity of the action taken to retire the preferred stock contrary to the provisions of the bylaws, we do not approve the conclusion. Appellees may be estopped to deny the meeting was validly called but they objected to the action taken at the meeting with respect to the retirement of the preferred stock and they are not estopped to challenge the validity of such action.

It appears that after the above action by the board of directors Geiman attempted to get as much out of the corporation as he could before the crash occurred. The court found he was responsible for various corporation shortages. It found he was guilty of unlawful, false and fraudulent conduct in the management of the corporate business for his own benefit. (Findings 5, 7, 9, 10, 15, 17, 20, 25, 26, and 28.) This court is not concerned with determining where the greater blame should be attached for the internal dissension and the deplorable existing conditions. It is concerned only with the intolerable conditions and with the question thereby presented, namely, whether a receiver should have been appointed to preserve the assets of the corporation.

It is true the law gives to a board of directors the general management of the affairs of a corporation. (G. S. 1935, 17-608; G. S. 1943 Supp., 17-3101.) It is also true that courts are reluctant to appoint a receiver, especially for a solvent corporation, and thereby divest directors of their right to manage and control the corporate affairs. That courts of equity may, however, appoint a receiver for

even a solvent corporation under proper circumstances is no longer open to debate. If statutory authority be required—which it is not—for such court action our law provides it. The pertinent provisions of G. S. 1935, 60-1201 read:

"A receiver may be appointed by the supreme court, the district court, or any judge of either, or in the absence of said judges from the county, by the probate judge:

. . . . . . . . . . . . . . .

"*Fourth.* After judgment, to dispose of the property according to the judgment, *or to preserve it during the pendency of an appeal,*

. . . . . . . . . . . . . . .

"*Sixth.* In all other cases where receivers have heretofore been appointed *by the usages of the courts of equity."* (Emphasis ours.)

Here there was internal dissension and irreconcilable conflict between the active president and general manager of the corporation, representing the great majority of both common and preferred stock, which proved highly hazardous to the continued existence of the corporate entity. Here there was a denial of official responsibility and a disregard of the fiduciary relationship of both of these officers to the corporate business. They would not work together and neither of them could be trusted separately to manage the corporation for its interest and benefit. One of them was perfectly willing to wreck the business if he could get his investment out of it, and he acted accordingly. The other was found guilty of various shortages and unlawful and fraudulent conduct which dissipated the assets of the corporation. In short, by these various means the objects of corporate existence were being jeopardized and defeated.

Under the existing circumstances a receiver should have been appointed. Courts of equity may, of course, exercise their judicial discretion in the appointment of a receiver and appellate courts are not inclined to disturb such exercise of discretion in the absence of abuse thereof. (*Jordan v. Austin Securities Co.,* 142 Kan. 631, 51 P. 2d 38.) Here, however, the record affirmatively discloses the trial court refused to appoint a receiver on the ground it believed it had no power or authority to do so when the corporation was solvent and not in danger of becoming insolvent. In view of the express findings it clearly appears the corporation was in grave danger of becoming insolvent if left in the hands of these antagonistic, quarrelsome and selfish directors or in the hands of either of them.

Moreover, courts of equity are not required to withhold or postpone the exercise of their inherent power to do justice until a corpo-

ration has been completely wrecked by insolvency due to unfaithful, unlawful and corrupt practices of officers in control. The law on the general subject of the power of courts of equity, with or without statutory authority, to appoint a receiver under varying facts and circumstances where impossibility of attaining corporate objects affirmatively appears was quite fully treated in *Jordan v. Austin Securities Co.*, supra. Former decisions of this and other courts, including cases involving solvent corporations, were reviewed and what was there said need not be repeated here. At the moment we are not dealing with the subject of dissolving the corporation but only with the appointment of a receiver to operate the business and preserve its assets. In equity, however, impossibility of attaining corporate objects is as good a ground for putting an end to operations as inevitable insolvency. (*Bowen v. Flour Mills Corporation*, 114 Kan. 95, 100, 217 Pac. 301; *Jordan v. Austin Securities Co.*, supra, p. 658.)

Notwithstanding the power of courts of equity to dissolve corporations this court is not inclined to exercise that power except as a last resort. It prefers to give these parties an opportunity to enter into some form of agreement, to be approved by the district court, whereby dissolution of the corporation may be avoided. In the interim a receiver should be appointed by the district court to take charge of the corporate property and business.

The case is therefore remanded to the district court with directions to appoint a receiver for the corporation with full power and authority to take possession of its books and property of every kind and character; to make an inventory of its assets and liabilities; to operate and manage the business in all particulars; to keep a full record of his transactions; the receiver to furnish a bond for the faithful performance of his duties in such sum as to the district court may seem just and proper in the premises. In the operation of the business the receiver is authorized to retain the services of Franklin Herthel and A. I. Geiman or the services of either of them, if he sees fit to do so, with the understanding, however, that he retain complete responsibility for and control over the corporate assets and the business management.

It is the further order and judgment of this court that in the event the parties fail to agree within sixty days from the date hereof upon a settlement, to be approved by the district court, which will make unnecessary the dissolution of the corporation

that then and in that event the receiver shall forthwith liquidate the corporation and distribute its assets among creditors and the stockholders as their interests appear.

The judgment of the district court is modified and affirmed in accordance with the views herein expressed.

"FINDINGS OF FACT AND CONCLUSIONS OF LAW.
"(Filed June 29, 1944.)

"1. The Geiman-Herthel Furniture Company is a corporation, organized and existing under the laws of the State of Kansas, and received its charter on or about the 24th day of November, 1936. Its place of business is Hoisington, Barton County, Kansas.

"2. The plaintiffs, Franklin L. Herthel, Velma Herthel and Addie B. Herthel, and the defendants, A. I. Geiman and Helen Geiman, and Frances Churchill, at the time this action was commenced, constituted all of the stockholders of said corporation. Franklin L. Herthel owned 117 shares of common stock and 117 shares of preferred stock. Velma Herthel owned 1 share of common stock and 1 share of preferred stock. Addie B. Herthel owned 1 share of common stock and 1 share of preferred stock. A. I. Geiman owned 161 shares of common stock and 11 shares of preferred stock. Helen Geiman owned 1 share of common stock and 1 share of preferred stock. Frances Churchill owned 1 share of common stock and 1 share of preferred stock. The total amount of the capital stock authorized to be issued by its charter is $15,000, divided into 150 shares of preferred stock of the par value of $100 each, and 300 shares of common stock without nominal or par value. The annual meeting of the stockholders is on the first Tuesday of February in each year at the office of the corporation in Hoisington, Kansas, and at such meetings the stockholders shall elect directors to serve until their successors shall be elected and qualified. The total number of directors to be elected are six. The directors are to fix their salaries and the salaries of the president, vice-president, and secretary-treasurer.

"3. For each share of preferred stock there was to be given one share of common stock. The preferred stock certificates each contained the following provision:

"'Holders of the common stock reserve the sole right to control the management of the corporation and all voting rights as specified in the Bylaws of the corporation and said right so as to control such corporation shall not be abridged by any subsequently enacted Bylaw.'

"The plaintiff Franklin L. Herthel was elected President of the corporation upon its organization and has ever since been, and now is, President of the corporation. The certificates of stock, both preferred and common, were all signed by Franklin L. Herthel as President, and Franklin L. Herthel at the time he signed the certificates of stock knew of the above provision contained in the certificates of preferred stock, and he not only signed the certificates, but accepted his certificates of preferred stock containing the said provisions therein, and is estopped to claim under the law or otherwise that the preferred stock of said corporation is entitled to any voting rights. The form of certificates of preferred stock and of common stock was regularly adopted at the first meeting of the corporation. The defendant A. I. Geiman has actively managed the business of the corporation since its organization, and under his management, it has paid dividends on all of the preferred stock, and ten percent of the preferred stock has been redeemed and paid off.

"4. Notices of the annual meeting of the corporation for the first Tuesday in February, 1943, were duly given, but by reason of the fact that the defendant Helen Geiman, one of the stockholders, was absent from Hoisington on the date specified in the bylaws and in said notice, said meeting was by common consent and acquiescence continued to and held on February 16, 1943, at which meeting all of the stockholders were present with the exception of Frances Churchill, who owned one share each of preferred and common stock, she being located in California. Subsequently said Frances Churchill, in writing, acquiesced and adopted the proceedings had in holding the annual meeting on February 16, 1943. All of the other stockholders except the said Frances Churchill participated in and voted at said meeting held on the 16th day of February, 1943. As a conclusion of law, the court finds that all of the stockholders are estopped to deny the validity of the meeting held on February 16, 1943, and the said meeting held on said date is found by the court to have been lawfully and regularly held. At said meeting, the salary of Franklin L. Herthel as president was fixed at $150 per month, and the salary of A. I. Geiman as vice-president and general manager, was fixed at $150 per month. Velma Herthel as secretary-treasurer was to receive no salary. The checks of the corporation were to be executed by both Franklin L. Herthel, as president, and A. I. Geiman, as vice-president. It was further ordered that the corporation retire its outstanding preferred stock,

as soon as, and to the extent that the same could be consistently and properly done. It was further provided that no bonus, commission, or extra compensation of any kind was to be paid to the officers of the company.

"Thereafter, A. I. Geiman attempted to call and hold a purported annual meeting of the stockholders on or about March 1, 1943, at which meeting all of the stockholders were present except the said Frances Churchill, Velma Herthel and Addie B. Herthel, but the only ones participating in said meeting, or taking any part therein, were the defendants A. I. Geiman and Helen Geiman, and A. I. Geiman and Helen Geiman were the only stockholders recognizing said meeting to be a valid meeting. At said meeting held on March 1, 1943, the defendants A. I. Geiman and Helen Geiman attempted to change the corporate charter and bylaws of said corporation by reducing the number of directors of the corporation to three, and attempted to elect the defendants A. I. Geiman and Helen Geiman, and one of the plaintiffs, Addie B. Herthel as directors of said corporation.

"Thereafter, the defendant A. I. Geiman, notified the plaintiff Franklin L. Herthel that Franklin L. Herthel was no longer an officer of the corporation, and that his services to said corporation in any capacity were discontinued, and that A. I. Geiman had taken possession of all property and affairs of the corporation, and was proposing to transact the business of the corporation, and keep the safe of the corporation and all corporate records locked from the plaintiffs Franklin L. Herthel, Velma Herthel and Addie B. Herthel.

"The court finds as a conclusion of law that the said purported meeting of the stockholders attempted to be held on March 1, 1943, was void and illegal, and that all acts of the parties participating in said meeting were void and illegal and without right or authority either in law or under any of the rules and regulations and bylaws of the corporation.

"5. The court finds that following said meeting of March 1, 1943, the defendant A. I. Geiman raised his salary from $150 to $175 per month, without any authority or right, and the court finds that the salary of the said A. I. Geiman from the 16th day of February, 1943, up to the present date, is only $150 per month, and all sums paid to him in excess of $150 per month, for salary since February 16, 1943, are excess payments, and he is charged with the excess thereof, and the court will retain jurisdiction of

this case to determine and ascertain the amount of salary which the said A. I. Geiman has been paid in excess of $150 per month since that date.

"6. The court finds that the salary of the plaintiff Franklin L. Herthel since February 16, 1943, up to the present time is $150 per month, and if the said Franklin L. Herthel has not received his full salary of $150 per month since February 16, 1943, he should receive the same, and the court retains jurisdiction of this case to ascertain and determine any shortage of salary in that respect and to make appropriate orders in connection therewith.

"7. The court finds that on October 17, 1941, the defendant A. I. Geiman handed to the plaintiff Franklin L. Herthel a check for $435, and about the same time paid to himself $725, and that on November 30, 1942, the defendant A. I. Geiman paid to the plaintiff Franklin L. Herthel $460, and about the same time paid to himself $700, and stated to the plaintiff Franklin L. Herthel at the time of each payment that such payment was a bonus for his services to said corporation, and that the payments made to the said Geiman were bonuses for his services to the said corporation.

"The court finds that each of said payments was made without authority of the corporation, without authority of the board of directors, and without knowledge of the board of directors, and each of said payments was without any right whatsoever and should not have been paid. The court therefore finds as a conclusion of law that the total bonuses paid to plaintiff Franklin L. Herthel in 1941 and 1942 in amount of $895 should be charged to the said Franklin L. Herthel and restored by him to the said corporation. The court therefore finds as a conclusion of law that the total bonuses paid to defendant A. I. Geiman in 1941 and 1942 in amount of $1,425 should be charged to the said A. I. Geiman and restored by him to the said corporation.

"8. The court finds that the issuance of 150 shares of common stock to A. I. Geiman for the good will of his going business at the time the company was incorporated was knowingly participated in by the plaintiffs, Franklin L. Herthel, Velma Herthel and Addie B. Herthel; that Franklin L. Herthel signed the certificates for the 150 shares of common stock and delivered the same to the defendant A. I. Geiman, and that the corporation, Franklin L. Herthel, Velma Herthel and Addie B. Herthel, all recognized and acquiesced in the issuance of said 150 shares of common stock to A. I. Geiman, and the court finds as a conclusion of law that the said cor-

poration and all of the stockholders of said corporation are estopped to deny the validity of the said 150 shares of common stock issued and delivered and now owned by A. I. Geiman, and the same should not be cancelled by this court.

"9. The court finds that Franklin L. Herthel, one of the plaintiffs, and A. I. Geiman, one of the defendants, have, ever since the said incorporation, actively engaged in the sale of merchandise at the place of business of said corporation at Hoisington; that their relations for at least one year prior to the commencement of this action were unpleasant; that they refused to coöperate with each other and very seldom had any conversations with each other while in the store or elsewhere. That when a customer entered the place of business, each of them would undertake to meet the customer first, for the purpose of excluding the other from participating in any prospective sales to the customer. That their actions in and about the store toward each other were unpleasant and disagreeable, and the defendant A. I. Geiman claimed the right and in many instances acted upon such claim to direct and control all of the actions of the plaintiff Franklin L. Herthel in his conduct and services in said corporation. The said A. I. Geiman assumed a domineering attitude towards the said Franklin L. Herthel. The court finds that the plaintiff Franklin L. Herthel and the defendant A. I. Geiman have more concern for their own personal interests in said corporation than they have for the corporation itself, that neither of said parties seem to recognize their fiduciary duties as directors of said corporation. The plaintiff Franklin L. Herthel seems to think that because he has invested much the greater sum of money in said corporation, that he should be the controlling agent of said corporation, while the defendant A. I. Geiman seems to think that because he organized said corporation, he should be the controlling agent of said corporation. As a result of their attitude toward each other, they have handicapped the operation and business of said corporation. Since none of the other stockholders of said corporation participate in the actual operation of the business of said corporation, the turmoil existing between the plaintiff Franklin L. Herthel and the defendant A. I. Geiman has brought about strife and unpleasantness in the conduct of the business of said corporation, and the strife between the said plaintiff Franklin L. Herthel and the said defendant A. I. Geiman is so antagonistic and selfish and offensive that neither the said Franklin L. Herthel nor the said A. I. Geiman have in the past or will in the future

compose their differences and adjust themselves to each other and coöperate with each other, all to the harm of the business of said corporation. Shortly after this case was filed, and on an application of the plaintiffs for a temporary receiver, the court refused to appoint a temporary receiver, believing then that by refusing to do so the said plaintiff Franklin L. Herthel and the defendant A. I. Geiman would compose their differences and get along with each other and act in the interest of the corporation, but they have refused and neglected to do so, and neither of them have shown any disposition or desire to want to do so.

"10. This action was filed on April 7, 1943, and notwithstanding the matter of the affairs of this corporation were thrown into a court of equity by reason of this action, the defendant A. I. Geiman while personally in charge of the books and records of the company, and without knowledge of any of the other stockholders or any of the other directors or officers, on September 20, 1943, credited himself with the following items:

"By credit for 19 weeks bookkeeping, extra work from June 16, 1942
to Nov. 1, 1942, at $10 per week................................... $190.00
Rent for truck, April, May, June, July, August, September........... 30.00
By storage for three years at $5.00 per month on an elevator, refrigerators, radio, vaults, and other merchandise........................ 180.00

and on September 22, 1942, he credited himself in the same manner with the following items:

"By damage to car on 1-6-43 on a business trip to Wichita........... $100.00
By part of costs in trying to collect damages........................ 25.00
By typewriter .................................................. 75.00

"A total of $610. Each and every one of these items of credit which the defendant Geiman entered on the books to his own credit were false, fraudulent and fictitious and without any substance or right and were entered by the said A. I. Geiman for the purpose of cheating and defrauding the corporation in the total sum of $610. The testimony regarding these items is found at pages 63, 64, 68 and 70 of the transcript.

"Notwithstanding that Geiman was drawing a regular salary for his services to the corporation, as shown at page 71 of the transcript, Geiman took credit for the following items:

"4-14-43, trip to Claflin ............................. $1.50
4-19-43 trip to Great Bend .......................... 2.00
3-20-43, two trips to Russell ........................ 2.00

"These items total $5.50. None of these items appear to have

been justified. The trip to Great Bend and the two trips to Russell, Kansas, were evidently made by Mr. Geiman in consulting his lawyers in the defense of this case.

"The court therefore finds that Geiman should be charged with the sum of $610, and with the said sum of $5.50, a total of $615.50 to be charged against the said A. I. Geiman.

"At page 73 of the transcript is a record of the transaction concerning Exhibit 14, which consists of three sheets of telephone bills charged to and paid by the corporation. Many of these long distance calls were made by Mr. Geiman in consulting with his attorneys in the defense of this case and were not proper charges against the corporation and should not be paid for by the corporation.

"11. In Finding No. 4 above, reference is made to the regular annual meeting held by the stockholders of the corporation and the Directors' meeting held by the Directors elected at said meeting, on February 16, 1943. At the said meetings of February 16, 1943, both at the stockholders' and the directors' meetings, one Kathleen Carlile was regularly selected and chosen as secretary of said meetings and to keep the minutes thereof. A. I. Geiman after the meetings were held, ordered the said Kathleen Carlile, secretary of said meetings, not to write up the minutes of said meetings, and to not insert the minutes of said stockholders' and directors' meetings in the regular record book where the minutes of stockholders' meetings and directors' meetings were regularly kept; and acting on the order of the said A. I. Geiman the said secretary did not write up the records of said meetings and insert them in the record book.

"At the trial of this case the said secretary testified as a witness, and she produced her minutes of said meetings, which were offered in evidence and are marked plaintiffs' Exhibit 10. The same read as follows, to wit:

" 'MINUTES OF THE STOCKHOLDERS' MEETING

Feb. 16, 1943.

"The Seventh annual meeting of the stockholders of the Geiman Herthel Furniture Co. was held in the City of Hoisington, Barton County, Kansas, at 8:00 p. m. on the 16th day of Feb. 1943.

"On roll call of the stockholders by the Pres., those present were Mr. A. I. Geiman, Helen S. Geiman, Franklin Herthel, Velma Herthel & Mrs. Addie B. Herthel.

"The motion was made by Velma Herthel that the same directors serve for the *isuing* year. Motion was duly made and carried.

"Motion was made by A. I. Geiman that stockholders' meeting be closed. On motion duly made and carried, the meeting was adjourned.

"Directors Meeting

"Feb. 16, 1943.

"The meeting of directors was called to order by the Pres.

"Motion was made by Velma Herthel & seconded by Addie Herthel, that officers be Franklin Herthel as Pres., A. I. Geiman as Vice-Pres. and General Manager, and Velma Herthel as Sec. & Treas. The motion was duly made & carried.

"Velma Herthel then presented resolutions as follows, Be it resolved by the Board of Directors of Geiman-Herthel Furniture Co. that the salaries of the officers of said Co. for *insuing* year be as follows, Franklin Herthel Pres. $150 a month, A. I. Geiman, Vice Pres. $150. a month, Secy. Treas. nothing. Motion was made on the resolution by Velma Herthel & Seconded by Addie Herthel. The vote was 3. 2 in favor of.

"Be it resolved by the Board of Directors that the checks of said Corp. of the First National Bank of Hoisington, Kans. & any other bank account on with the Co. might have be signed by the following Franklin Herthel Pres. A. I. Geiman Vice Pres. or Velma Herthel Secy. Treas. Motion was duly made and carried on this resolution.

"Motion was then made by Franklin Herthel and seconded by Velma Herthel, that. no bonus or other compensation be paid. Motion was duly made and carried vote of 5 - 0.

"Motion made by Velma Herthel that Co. hire an auditor to audit the accounts of said Co. for past 6 years. Motion seconded by Franklin Herthel. Motion was duly made and carried by vote of 3 - 2.

"Motion was made by Velma Herthel that the said Corp. pay off the preferred stock with money from the firm or by mortgages by use of capital on hand or by borrowing in any manner necessary the money needed to retire the preferred stock. Motion seconded by Addie Herthel. 10% of this to be paid by March 1st & balance within 6 months. Motion duly made & carried by vote of 3-2.

"A report was given on the business done during 1942 by the General Manager.

"On motion duly made and carried the meeting was adjourned.' [sic.]

"The Court finds as a conclusion of law, that plaintiffs' said Exhibit 10 is a true and correct record of the minutes of both the stockholders' and of the Directors' meetings held on February 16, 1943. And the Court finds as a conclusion of law that the same should be ordered, and it is ordered, that the records of said corporation be supplied with a copy of said minutes of said meetings.

"12. The capital stock of the corporation was paid for by the stockholders of the corporation in the following amounts, to wit:

"Franklin L. Herthel................................ $11,700
Velma Herthel .................................... 100
Addie B. Herthel.................................. 100
A. I. Geiman .................................... 1,100
Helen Geiman .................................... 100
Frances Churchill ................................ 100

"13. Regular annual meetings of the corporation were held by the stockholders each year from its creation up to and including the 16th day of February, 1943. At none of these stockholders' meetings did A. I. Geiman, or his wife Helen Geiman, or any of the other stockholders, pay any attention to that provision of the certificate of stock which is quoted in Finding No. 3.

"14. The defendants ought to be enjoined, and they are hereby enjoined, from certifying to the Secretary of the State of Kansas, or other governmental agency, any part of the records of the minutes of the purported meetings of the stockholders and directors held March 1, 1943; which meetings this Court has held were void. And they are further enjoined from applying for a change in the charter of the corporation, and from reducing the number of the Board of Directors from six to three as ordered by said purported meeting of March 1st, 1943.

"15. The Court finds that the defendant A. I. Geiman delivered to his wife Helen Geiman, one of the other defendants in this case, an air conditioner belonging to the corporation, and that the same was installed in the place of business of the said Helen Geiman, and the said Helen Geiman and the said A. I. Geiman were never charged on the books of the company with the price of said air conditioner. This was all done without the authority of any of the Board of Directors except the defendants, and was never authorized by the Board of Directors. And the Court finds that the defendants A. I. Geiman and his wife Helen Geiman should be, and they are, charged with the invoice price of said air conditioner, plus 10%, the usual charge made by the corporation for goods sold to its officers. And the said A. I. Geiman and his wife Helen Geiman are charged therefor with the total sum of $————.

"16. The defendant A. I. Geiman has consistently interfered with the rights of Franklin L. Herthel with reference to the books and records of the Company, and has frequently prevented the said Franklin L. Herthel from examining the books and records of the Company. And the Court finds that he should be and he hereby is, enjoined from interfering with or obstructing the said Franklin L. Herthel in his efforts to examine the books and records of the corporation.

"17. The Court finds that the defendant A. I. Geiman sold and delivered goods, wares and merchandise of the corporation to his brother ———— Geiman, and charged his brother with the price of said goods on the books of the corporation, but later on and

without authority of the Board of Directors, the said A. I. Geiman charged off the accounts of his said brother without any payment whatever to said corporation, and the brother of the said A. I. Geiman has removed from the State of Kansas.

"18. The defendant A. I. Geiman has interfered with the rights of Franklin L. Herthel as President and a Director of this corporation and as an employee of the corporation, in participating in the business of said corporation. And the Court finds that the defendant A. I. Geiman should be and he is hereby restrained from interfering with the said Franklin L. Herthel as President of said corporation, and interfering with the said Franklin L. Herthel in conducting the business and clerking in the store operated by the said corporation.

"19. Dividends have been paid upon the preferred stock of the corporation without any official action or authorization of the Board of Directors; but inasmuch as said payments were proportionately made up until the —— day of ————, 194——, upon all of the outstanding preferred stock of the corporation, and without any objection being made thereto, such payments are hereby approved and confirmed.

"20. At a hearing held on March 7, 1944, testimony was introduced concerning a shortage of $185 which developed in one of the cash boxes kept in the safe at the corporate place of business, in which rent money was kept. The plaintiff Franklin L. Herthel mentioned that about the 26 day of January, 1944, there was discovered a shortage occurring between January 23, 1944, and January 26, 1944, of about $35, and when examined on January 30, 1944, there was another shortage of about $25; and there were other shortages discovered in this box where the rent money was kept. A. I. Geiman kept the records and had charge of this box and the money therein. Some time in February, 1944, Franklin Herthel asked A. I. Geiman if he knew of this shortage, and A. I. Geiman informed him that he did not. Franklin L. Herthel and A. I. Geiman went to the records relating to the rent money kept in this box, and agreed that the cash was short a total of $185.

"All of the parties having access to this cash testified and denied that they took any part of it, excepting the defendant A. I. Geiman. Geiman did not take the stand or testify regarding this shortage, nor did he deny that this cash was under his charge and control.

"The Court finds that A. I. Geiman is responsible for this shortage; and it is by the Court ordered that he make good to the corporation on account of this shortage, the sum of One Hundred Eighty Five Dollars ($185).

"21. The Court finds that the corporation has been making money, and that said corporation is not insolvent and never has been, and is not in any danger of insolvency.

"22. The Court finds as a further conclusion of law, that a receiver for said corporation should not be appointed; and the prayer of the petition of the plaintiffs for the appointment of a receiver is denied; and the costs of this action attached to the corporation.

"23. There have been no transfers or sales of any of the original stock issued by the corporation to third persons, except a transfer of about five shares of stock made by the defendant A. I. Geiman to one of his attorneys representing him in this case. And this transfer was made after and during the pendency of this action, and after the case was actually tried.

"24. While the forms of stock certificate, being the forms which were subsequently issued, were read and adopted at a meeting of the stockholders and directors, and were ordered to be incorporated in the minutes of the meeting by the secretary, the secretary neglected to incorporate the forms of such certificate in the minutes of the meeting.

"25. In the opinion of the court, if A. I. Geiman has the exclusive charge and control of the management of the affairs of the corporation, he would be more inclined to look to his own interests rather than to the interest of the stockholders of the corporation.

"26. Since the court has made up the foregoing findings, at a hearing held at Great Bend, Kansas, on the 29 day of June, 1944, the parties to this action have gotten together and agreed between the parties that the defendant A. I. Geiman has drawn $325 in salary in excess of the $150 per month which was allowed him by resolution of the Board of Directors of February 16, 1943;

"And the court therefore orders him to be charged the sum of $325 on the books of the Company for excess salary.

"27. The court also finds by agreement of the parties that plaintiff Franklin L. Herthel has been paid in full for his salary at the rate of $150 per month from February 16, 1943, up to June 1, 1944.

"28. The court further finds by agreement of the parties that the value of the air conditioner referred to in the foregoing findings,

which was taken from the store with the permission of A. I. Geiman and installed in his wife's beauty parlor, is $101.70, being the invoice price, and in addition thereto ten percent of that amount; and the defendant A. I. Geiman and his wife are charged with $111.87.

"29. The court further finds by agreement of the parties, that the account of the brother of the defendant A. I. Geiman, has been paid in full.

"Done in Open Court at Great Bend, Kansas, in the presence of all the parties to this action, and in the presence of their respective attorneys, this 29th day of June, 1944."