JOHN FLUKER *et al.* V. THE EMPORIA CITY RAILWAY COMPANY *et al.*

48  577<br>52  664

1. RECEIVER—*Appointment*—*Discretion of the Court.* The appointment of a receiver in an action like this is a matter resting so largely in the discretion of the trial court that the order refusing one will not be changed unless it is evident that reasonable discretion has been abused.

2. ———— *No Ground to Appoint.* Dissatisfaction by a minority of the stockholders of a corporation with its management by the majority, in the absence of fraud or insolvency, is not sufficient to authorize the court to appoint a receiver at the instance of the minority.

*Error from Lyon District Court.*

THE opinion states the case.

*C. N. Sterry,* and *J. Jay Buck,* for plaintiffs in error.

*L. B. Kellogg,* for defendants in error.

Opinion by SIMPSON, C.: The plaintiffs in error, owning a minority interest in the Emporia City Railway Company, a corporation organized under the laws of this state, commenced this action in the Lyon county district court on the 12th day of October, 1889. The principal question in the case determined by the trial court, and the sole question here is, whether a receiver should be appointed. At the trial the court made the following special findings of fact:

"1. The Emporia City Railway Company is a corporation duly organized under the laws of the state of Kansas, and was incorporated about November 3, 1881. It capital stock is composed of 250 shares of $100 each. When this suit was commenced these shares were distributed and owned as follows, viz.:

| | |
|---|---|
| By the plaintiff John Fluker............................. | 60 shares |
| By the plaintiff D. W. Holderman....................... | 16 shares |
| By the plaintiff John Holderman........................ | 8 shares |
| By the plaintiff Magdalene Holderman................... | 8 shares |
| By the plaintiff Elizabeth Holderman................... | 8 shares |
| By the plaintiff J. L. Patty.............................. | 4 shares |
| By the plaintiff John H. Patty........................... | 4 shares |
| By the plaintiff D. W. Holderman, administrator, etc....... | 4 shares |
| By the plaintiff H. C. Cross, guardian, etc................ | 8 shares |
| Total................................................ | 120 shares |

37 — 48 KAS.

| | |
|---|---:|
| By the defendant Van R. Holmes | 50 shares |
| By the defendant C. V. Holmes | 1 shares |
| By the defendant A. F. Crowe | 28 shares |
| By the defendant J. D. Holden | 51 shares |
| Total | 130 shares |
| | 120 shares |
| | 250 shares |

"2. At the time of the trial the plaintiff D. W. Holderman had sold 14 of his 16 shares, and they were then owned by a person not a party to the suit. Eighty-five per cent. of the capital stock only has been paid in.

"3. The plaintiff John Fluker purchased his said 60 shares of stock about May 17, 1887, of his co-plaintiff D. W. Holderman, at 100 cents on the dollar, at which time the defendants were and ever since have been the owners of a majority of the capital stock, and in the control and management of said corporation.

"4. The board of directors of said corporation are: Van R. Holmes, J. D. Holden, John Fluker, D. W. Holderman, A. F. Crowe, and C. V. Holmes. The officers are: Van R. Holmes, president; John Fluker, vice-president; and J. D. Holden, secretary, temporary treasurer, and manager of the railroad.

"5. The 85 per cent. of stock paid in, amounting to $21,-375, was all consumed in placing the road and equipments in operation. A large part of the rails were 'second-hand,' but with that exception the entire road and its equipments were new and in good condition when the road began to be operated, and up to May or June, 1887, when the last dividend was paid, the road was a fairly successful enterprise, but at that time its business decreased, and ever since it has been operated at a loss. In 1889 its expenses exceeded its receipts $1,235.74. In 1890 the receipts were sufficient to pay operating expenses, but on account of expenses by way of repairs the expenses exceeded the receipts in the sum of $707.21. The deficit for 1887 was $550. The deficit for 1888 was $2,100. Since the corporation began the operation of its street railway, the entire road and its equipments have run down and materially depreciated in value. It being impossible for the officers to make repairs out of the receipts of the road, none were made, except such as were necessary in order to keep the road in operation.

"6. The present assets of this corporation consist of the franchise from the city of Emporia, for the use of its streets in the operation of said railway for 20 years from 1881, to-

gether with $3\frac{1}{4}$ miles of track used and operated by said company, which track is worth $2,850; 20 mules, worth $920; one stable, lot, and building, $600; eight cars, $2,320; 15 per cent unpaid stock, $3,625; total, $10,315.

"7. The liabilities of said corporation are as follows: One note to A. F. Crowe, one of the defendants, for $3,000, with interest from August 17, 1889, at 10 per cent., which represented the entire indebtedness at that date, $3,000,; one note in bank, March, 1891, $1,150; unpaid taxes, $132; total, $4,282.

"8. The plaintiffs John Fluker and D. W. Holderman have, ever since soon after said Fluker purchased his stock, been dissatisfied with the management of the defendant officers of said corporation, and have sought to induce the board of directors to extend the lines of said road and change the manner of operating the road, but the defendants were in the majority, and persisted in pursuing their own methods. This disagreement caused considerable feeling and dissatisfaction on the part of Fluker, and he tried to buy of defendants enough of their stock to give him a controlling interest, and to that end made various offers of purchase, offering as high as two dollars for one for 28 shares; but said defendants refused to accept said offer, or any offer which did not include the entire stock of all the said defendants. The said defendants claim to have had no confidence in said Fluker's business capacity, and agreed together not to permit him to become the owner of a majority of the stock, unless he would purchase all the said defendants owned. Said Fluker then tried to sell his stock to said defendants at different times and prices, until a short time before this suit was brought he offered to take 40 cents on the dollar for all of his stock, and D. W. Holderman offered to sell to said defendants his stock at 85 cents on the dollar; but the defendants declined to accept any of the offers made. Said Fluker then sought to be employed as manager of said road, and to this end proposed to operate said road without pay for his services, unless he should make the road pay a dividend of 6 per cent. per annum on all the stock; and to protect the corporation in the fulfillment of this proposition by giving a good bond, which he was able to give, but this proposition was also declined by all the defendants.

"9. The defendant's officers have not received salaries for some time, except the sum of $25 per month to the manager and treasurer, both offices being filled by the same person.

"10. Since 1887 there has been a depression in business generally in the city of Emporia, to which the defendants attribute the falling-off of receipts in the operation of the railway, and insist that the present indications of returning prosperity warrant a continuation of the operation of said road under its present management.

"11. The business of the corporation has been conducted by the defendants to the best of their business ability. No fraud on their part has been shown, the business has been done openly, and in the manner which to the defendants seemed to the best interest of themselves and of the corporation."

"CONCLUSION OF LAW.

"The plaintiffs are not entitled to a receiver."

The right to have a receiver appointed under these findings is strongly insisted upon in this court, and the case of *Elwood v. National Bank*, 41 Kas., is cited to sustain the contention. It is also claimed as a statutory right under the fifth subdivision of § 254 of the code. Counsel for plaintiffs in error forget that the power of the court to appoint a receiver must be exercised with great care and the utmost caution, and with a due regard for the interests as well as the legal rights of all parties sharing in the property. It is also elementary that the appointment of a receiver is a matter resting largely in the discretion of the court. The trial court has exercised its discretion by refusing to make such an appointment, and unless a very strong showing is made, or this court is satisfied that the discretionary power has not been properly exercised, the conclusion below will not be disturbed.

If a receiver should be appointed in this case, it would be in effect saying that the minority of the stockholders had the right to control the corporate property and dictate its management, because the legal effect of the appointment of a receiver is to take the property out of the control of the owners and suspend for the time being all the functions of the corporation, and there is no fact found by the trial court that would authorize such a proceeding. The sole object of the petition in

this action, and its sole prayer, is the appointment of a receiver to take charge of this street railway and manage it under the orders and directions of the court, and the only tangible reason given is, that the minority are dissatisfied with the mode of control pursued by the majority. In other words, the minority want the court to operate the road through the instrumentality of a receivership, rather than permit the majority of the stockholders to do so. The trial court finds that the road has been managed by the defendants in error to the best of their business ability. No fraud is alleged or shown. Open and fair dealing has characterized the entire management.

It may be that, under the fifth subdivision of section 254 of the code, if this corporation was in imminent danger of insolvency, the district court would have the power to appoint a receiver to manage, control and, probably, finally dispose of the corporate property, but we do not think that this record justifies any such conclusion of insolvency.

It seems to us that the trial court acted with wise discretion, and that the judgment ought to be affirmed.

By the Court: It is so ordered.

All the Justices concurring.