No. 24,803.

JAMES NELSON, WILLIAM STOSKOPF and W. C COONEY, *Appellees,* v. THE UNITED ELEVATORS COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

CORPORATION—*Dissension and Deadlock Between Directors—Failure of Corporation to Carry on Corporate Business—Receiver Appointed to Preserve Assets from Dissipation.* Where a corporation is insolvent or in danger of insolvency, and where dissensions exist between its directors and managing officers amounting practically to a deadlock which prevents the carrying on of the corporate business, and where it has failed to pay its corporation fees to the state and its charter is subject to forfeiture, a court has jurisdiction to appoint a receiver to take charge of its affairs and preserve its assets from dissipation, and an order of the court for that purpose is not void, even though the court has made no final order for the winding up of the corporation.

Appeal from the Shawnee district court, division No. 1; JAMES A. McCLURE, judge. Opinion filed March 8, 1924. Affirmed.

*Eugene S. Quinton,* of Topeka, for the appellant.

*T. M. Lillard, Bruce Hurd,* and *O. B. Eidson,* all of Topeka, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: This controversy arises over the appointment of a receiver for the defendant company, at the instance and on the application of certain of its stockholders.

The record shows that the defendant is a corporation existing under the laws of Kansas, with its principal place of business at Topeka; that it owns four elevators, located at Stickney, Hitschman and Beaver, all in Barton county, and at Eskridge in Wabaunsee county; that, previous to January 1, 1922, it was engaged in the business of buying and selling grain; that the active management of the business was in the hands of A. H. Bennett, sr., as president, and A. H. Bennett, jr., as secretary; that the plaintiffs are stockholders and directors; that in July, 1921, the plaintiffs guaranteed payment to the Merchants National Bank of Topeka of certain indebtedness incurred by the defendant of approximately $11,000; that at the time of the signing of the guaranty by plaintiffs, A. H. Bennett, sr., represented to the plaintiffs that the defendant was solvent and that there was no lien or encumbrance upon its property, and that, as security for signing the guaranty, the plaintiff would have a valid lien on defendant's assets; that at the time of the filing of this action, the defendant was indebted in approximately the sum of $21,000 to various creditors, some of whom were threatening suits against the defendant; that the defendant was insolvent and unable to fully pay its indebtedness; that it had ceased to carry on any business; that the president and secretary had abandoned the offices formerly occupied by the defendant, had sold off practically all of the office furniture, and were fraudulently disposing of the property of the corporation for their individual and personal benefit; that the defendant had no funds with which to do business, and no credit whereby it could obtain funds to discharge its indebtedness; that it had failed to pay its annual corporation fees to the state for the year 1921, and that its charter was subject to forfeiture.

The defendant demurred to the testimony of plaintiffs and offered no testimony. The court, on the evidence of plaintiffs, found:

"That the property of said defendant is in danger of being lost or materially injured; that said corporation is in imminent danger of insolvency; that the officers and directors thereof are unable to agree among themselves as to the disposition of the property of said corporation; that said corporation is without funds to meet past due indebtedness or operate its business as a going concern, and has exhausted its credit, and that a receiver should be appointed for the defendant corporation, to take charge of and liquidate its affairs, and that Otis E. Hungate is a fit and proper person to act as such receiver."

The defendant contends that the action was brought for the appointment of a receiver only; that it was not ancillary or auxiliary to any pending case; that the petition did not state a cause of action; that the evidence adduced by the plaintiff was insufficient to warrant the appointment of a receiver and that the court was without jurisdiction to render judgment appointing a receiver.

A similar controversy was recently considered in *Bowen v. Flour Mills Corporation,* 114 Kan. 95, 217 Pac. 301. It was there said:

"Courts of equity came into existence for the purpose of affording such relief as justice and good conscience required, under the peculiar circumstances of the case. In some jurisdictions, instead of keeping up with social progress, equity has set and hardened. Its potency to meet new conditions has been emasculated, and frequently the caution to be displayed and the limitations to be observed in appointing receivers, loom so large that, as the Missouri court has observed, judicial hesitancy degenerates into judicial atrophy. (*Cantwell v. Lead Co.,* 100 Mo. 1.) In other jurisdictions a better view is taken, and the phrase, 'by the usages of courts of equity,' means according to the informing spirit of equity heretofore manifested in the appointment of receivers." (p. 99.)

The legislature has authorized the appointment of a receiver in certain enumerated cases and "in all other cases where receivers have heretofore been appointed by the usages of the courts of equity." (R. S. 60-1201.)

*In re* Lewis, 52 Kan. 660, 35 Pac. 267, it was said:

"Under the fifth subdivision of § 254 of the civil code a receiver may be appointed at the suit of a stockholder, where the business and affairs of a corporation have been so mismanaged that it has become insolvent, and where it is made to appear that all the officers and directors of the same have conspired together to divert its business to another company, dissipate its funds, and fraudulently absorb and apply its assets to the individual benefit of such officers."

In 4 Pomeroy's Equity Jurisprudence, 4th ed., § 1537, it is said:

"The inherent jurisdiction of a court of equity to appoint receivers of corporations, in proper cases, independently of statutory authorization, has been frequently recognized. The cases in which the power is most frequently in-

voked are as follows: 1. In suits by stockholders seeking a remedy for breeches of their fiduciary duty by the directors or officers of the corporation. . . . 3. When the corporation has no properly constituted governing body, or there are such dissensions in its governing body as to make it impossible for the corporation to carry on its business with advantage."

In § 1541 of the same work it is said:

"Notwithstanding many dicta, and the assertions of the older textbooks, the current of recent authority appears to be strongly in favor of the inherent power of the court, in a proper case, to displace the management of guilty or negligent officials by the instrumentality of its receiver. It has been frequently pointed out that the appointment of a receiver in cases of this character does not necessarily result in the dissolution or extinction of the corporation."

In *Bowen v. The Flour Mills Corporation,* supra, the dissensions created a deadlock so that proper operation of the corporation was impossible. While the dissensions in the instant case were perhaps not so strikingly apparent, the effect amounted virtually to a deadlock. The allegations of the petition sufficiently alleged, and the testimony showed that the managing officers of the corporation had surrendered its office and were fraudulently converting the assets of the corporation to their own use and benefit; that the corporation was either insolvent or in danger of insolvency; that its corporate fees had not been paid and its charter was subject to forfeiture by the state. Under all the circumstances we are unable to say that the court was without jurisdiction or that the appointment of a receiver was not justified or that the trial court abused its discretion.

The judgment is affirmed.