No. 42,608

Jacobson-Lyons Stone Company, Inc., a Corporation, *Appellee,* v. Silverdale Cut Stone Company, a Division of Forburger Company, Inc., a Corporation, *Appellant.*

(370 P. 2d 68)

Opinion filed April 7, 1962.

*Richard W. Stavely,* of Wichita, argued the cause, *W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, Ralph M. Hope, Charles S. Lindberg* and *Ronald M. Gott,* all of Wichita, were with him on the brief for the appellant.

*Donald Hickman,* of Arkansas City, argued the cause, *Kirke W. Dale, William E. Cunningham* and *William R. Howard,* all of Arkansas City, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action by a creditor against a foreign corporation on an account receivable. Upon motion a receiver was appointed by the trial court for a division of the foreign corporation within the state of Kansas, without requiring the creditor to post bond, upon one day's notice after the filing of the action. A bond, however, was required and posted by the receiver.

Appeal has been duly perfected pursuant to G. S. 1949, 60-1209, from the order of the trial court appointing the receiver.

The primary question is whether upon the facts of this case the trial court erred in appointing a receiver. Other questions preliminary in nature are also presented.

On the 20th day of March, 1961, the Jacobson-Lyons Stone Company, Inc., a corporation (plaintiff-appellee), filed a petition alleging among other things:

". . . that the defendant, Silverdale Cut Stone Company, is a division of Forburger Company, Inc., a Nebraska corporation, with its office and principal place of business at Lincoln, Nebraska, with a plant and a resident manager and agent at Silverdale, Kansas."

It further alleged the defendant was indebted to the plaintiff in the sum of $1,194.46 for stone sold and delivered. Summons was issued commanding the sheriff to notify the "Silverdale Cut Stone Co., a Division of Forburger Co., Inc., upon Eva Piatt, Silverdale Resident Agent." The sheriff's return disclosed personal service upon Eva Piatt the 21st day of March, 1961, and further disclosed that the sheriff had made diligent search in his county for the president, cashier, treasurer, secretary or other officers of the Silverdale Cut Stone Company, and not finding any of such officers in his county other than the resident agent, summoned the defendant "by delivering a certified copy of this writ with all endorsements thereon to Eva Piatt she being the Resident Agent and the highest officer of the above named defendant found in my county and being in charge of the office of said defendant at Silverdale, Kansas."

The summons and the return was filed March 22, 1961.

Simultaneously with the filing of the petition the plaintiff filed a motion for the appointment of a receiver, which alleged among other things that property of the Silverdale Cut Stone Company, a division of Forburger Company, Inc., has been appropriated by C. W. Forburger, president of Forburger Company, Inc., at Lincoln, Nebraska, and the same is in danger of becoming lost, removed and materially injured. It further alleged the defendant was insolvent. The motion requested that a receiver be appointed to take charge and conserve all of the assets belonging to the Silverdale Cut Stone Company, a division of Forburger Company, Inc., and to pay the debts of said company and to wind up the business and affairs of said company. This motion was served upon the defendant with the summons the 21st day of March, 1961. Hearing on the motion was set for the 22nd day of March, 1961. The notice for hearing was dated and served upon the defendant the 21st day of March, 1961.

A subpoena *duces tecum* was directed to "Eva Piatt, Resident Agent for Silverdale Cut Stone Co., a Division of Forburger Co., Inc., Silverdale, Kansas," to appear on the 22nd day of March, 1961, with the "books and records of Silverdale Cut Stone Co., showing debts, assets and accounts."

The trial court after hearing the motion on the 22nd day of March, 1961, appointed a receiver without requiring the plaintiff to post bond. The order appointing the receiver recited that "Eva Piatt, the duly registered resident agent of the defendant corporation appears in person in response to summons, subpoena *duces tecum*, and notice of hearing of said motion."

At the hearing Eva Piatt testified that she was the "resident agent for the Silverdale Cut Stone Company" as well as bookkeeper and office manager. She acknowledged receipt of summons and said she tried to phone C. W. Forburger, president of Forburger Company of Lincoln, Nebraska, of which "Silverdale Cut Stone Company is a subsidiary," but could not reach him and made no arrangements to have him contacted. She gave the correct name of the parent company of Lincoln, Nebraska, as "Forburger Company, Incorporated, D. B. A. Forburger Stone Company."

She brought the records of the Silverdale Cut Stone Company with her and testified that it was insolvent. She said the liabilities were $47,438; that no sufficient funds were available to pay this amount and no sufficient money was available to pay current expenses. She said there was $1,500 cash on hand; that "Goods receivable" were $128,000, of which $105,000 was for Forburger Stone Company at Lincoln, Nebraska. She indicated that many creditors had often contacted her concerning the accounts payable and have threatened suit. When she notified Forburger "he told me he would send some money, which he didn't, or to pay them $5.00 or $10.00 or something like that, but I didn't even have that much to pay them. We have just been making our payroll and that is about the extent of it."

She further said Mr. Forburger or the Forburger Company will not pay her the $105,000 account, and she does not consider it a good account; that as a rule he charges it off at the end of the fiscal year; that almost all of the business consists of sending stone up to him at cost and below cost part of the time.

She further testified that on the 31st day of May, 1960, the sum of $36,504.85 owing by Manhattan Cut Stone Company was charged off. Another subsidiary of Forburger Company, Inc., now out of business, had an account with Silverdale in the amount of $24,926.73 charged off on August 24, 1959, at Mr. Forburger's directions. On February 9, 1961, an account payable of $3,620.58 by Omaha Cut Stone Company was charged off at the direction of C. W. Forbur-

ger, president and treasurer of the parent corporation. In her opinion "the company" would not be able to pay off its debts.

The witness testified she had been with the Silverdale Cut Stone Company for fifteen years. That the expense of cutting the stone, getting it into shape to deliver, and trucking expense for delivery were all paid by the Silverdale Cut Stone Company. She further testified the charge-offs relative to the Omaha Cut Stone Company and the Manhattan Cut Stone Company were not part of the $105,-000 owing to Silverdale Cut Stone Company by the Forburger Company, Inc., of Nebraska; and that the $105,000 debt began accumulating in May, 1958. She said Mr. Forburger "would owe a lot more than that for stone, but he sends, oh, like a junk truck down here and charges us $3,000.00, and has us to give him credit on invoices for that or such things as that."

James Gallus was called by the plaintiff and testified that he was general manager of the Silverdale Cut Stone Company from January 1, 1961, to March 11, 1961; that he was hired by C. W. Forburger of Lincoln, Nebraska, "president of Forburger Stone Company and of this division, Silverdale Cut Stone Company." He also testified the company was insolvent. "The accounts payable double the accounts receivable. The work that had been coming into the company was mostly from Mr. Forburger, C. W. Forburger in Lincoln, and he doesn't pay for the stone he gets, and therefore the company operates with a deficit and cannot pay its bills." "He doesn't send any money down to carry the company."

He testified the stone was sold at wholesale price—at cost, and was billed to Forburger like any other customer. He said "Mr. C. W. Forburger, in my opinion, kept it as a working horse for his company, and what he could milk out of it to his benefit, so long as he could keep going, and at the rate it is now, he let it go at that. He wouldn't try to pay his bills and build up the business like it should be run."

Other testimony of James Gallus was consistent with the testimony of Eva Piatt.

Upon the foregoing evidence the trial court in its order appointing the receiver found that the Silverdale Cut Stone Company was unable to meet and discharge its obligations and was insolvent. It further found that many of its creditors were about to institute suits against the Silverdale Cut Stone Company for recovery of money; that certain of the property and assets of the Silverdale Cut

Stone Company have been appropriated by C. W. Forburger, president of Forburger Company, Inc., at Lincoln, Nebraska; and that the same is in danger of becoming lost, removed and materially injured.

The court further found that a receiver should be appointed to take charge of and operate the business and affairs of the Silverdale Cut Stone Company, a division of Forburger Company, Inc., in order to pay the debts of said firm, to conserve its assets, to wind up the business and affairs of said company, and to take such other and further action as shall be directed and ordered by the court from time to time.

By its order the trial court appointed a receiver "of the business and affairs of Silverdale Cut Stone Company, a division of Forburger Company, Inc., a corporation, and that, upon the filing of his oath and corporate surety bond in the amount of $20,000.00, he forthwith take possession of all of the property and assets of the Silverdale Cut Stone Company, including all real and personal property of the said firm, located at and about Silverdale, in Cowley County, Kansas, and any and all other and additional personal and real property, wherever situate, *within the State of Kansas,* belonging to said firm." (Emphasis added.)

The court further ordered the receiver to continue, manage and operate the business of the Silverdale Cut Stone Company; to collect and receive accounts, debts and rents of said firm; to take possession of the bank account of the Silverdale Cut Stone Company in the Home National Bank of Arkansas City, Arkansas City, Kansas, and to use said account and the funds therein as an operating fund for said business, and to keep a true and accurate account.

It further ordered the stay of further proceedings by the plaintiff upon its petition; stayed all other proceedings, actions and suits against Silverdale Cut Stone Company; ordered that all creditors of Silverdale Cut Stone Company present and make proof of their respective claims within sixty days; and retained jurisdiction for further proceedings.

Thereafter on the 28th day of March, 1961, a motion was filed by *"Silverdale Cut Stone Company, a division of Forburger Company, Inc.,"* (emphasis added) through its attorney requesting the court to set aside its order entered on the 22nd day of March, 1961, appointing a receiver "for the defendant, Silverdale Cut Stone Company," for the following reasons: ( *a* ) That no officer of *said*

*corporation* was notified of the hearing relative to the appointment of a receiver; (*b*) that the person appointed receiver was an interested party in the receivership; and (*c*) that the defendant was not insolvent.

It should be observed in passing the foregoing motion constitutes a general entry of appearance by Silverdale Cut Stone Company, a division of Forburger Company, Inc., through its attorney.

There is no indication in the record that the foregoing motion has ever been called or noticed for hearing.

On the 20th day of April, 1961, appeal was duly perfected to this court from the order appointing a receiver, whereupon the authority of the receiver was suspended by the trial court pursuant to the provisions of G. S. 1949, 60-1209, upon the filing of the required statutory bond by the appellant in the amount of $20,000. The appellant thereupon took possession and resumed operation of the business.

The record discloses that although less than thirty days expired before the receiver's powers were suspended, forty-seven creditors with aggregate claims of $23,475.57 made proof thereof with the clerk of the district court. Of this amount, the appellant in its report to the trial court on the 5th day of July, 1961, asserted that $15,259.92 had been paid or satisfied.

Assuming this to be true there remain claims aggregating $32,178.08 unpaid and owing ($47,438 less $15,259.92) as the record now stands upon the abstract presented by the *appellant*.

The foregoing facts have been stated in considerable detail to help clarify and define the issues hereafter discussed.

The only corporation claimed to exist in this case is a foreign corporation.

A basic question in any judicial controversy is whether the court has jurisdiction. Here the service of process and notice of hearing were had upon the resident agent of the corporation at the principal place of business of the corporation at Silverdale, Cowley County, Kansas.

While the appellant does not challenge the service of process upon Eva Piatt, the resident agent and office manager at Silverdale, Kansas, (see G. S. 1949, 60-2524; 60-2518; and 60-507) which it recognized by a general entry of appearance, it does challenge the trial court's jurisdiction to appoint a receiver without requiring the creditor (appellee) to post bond in the order appointing such receiver.

The argument on this point proceeds upon the assumption that there was undue haste in the appointment of a receiver. The hearing upon the motion for the appointment of the receiver gave only one day's notice which was served upon Eva Piatt, the local representative of the foreign corporation. No officer of the corporation actually received notice of this hearing. The appearance at the hearing by Eva Piatt pursuant to subpoena, despite the trial court's finding that "Eva Piatt, the duly registered resident agent of the defendant corporation appears in person in response to summons, subpoena *duces tecum*, and notice of hearing of said motion," cannot be said to amount to an entry of appearance by the appellant. Attendance in obedience to a subpoena *is* not an appearance. (*Manufacturing Co. v. Hayes,* 97 Kan. 740, 156 Pac. 735; and see *State Bank v. Sesler,* 117 Kan. 383, 232 Pac. 612.) Not until six days after the hearing on the motion to appoint a receiver did the appellant make a general entry of appearance through counsel.

Relying upon *Weber v. Sutorius Bread Company,* 185 Kan. 171, 341 P. 2d 959, the appellant argues the appellee was either required to give notice or post bond.

On the facts here presented it cannot be said the order appointing a receiver was entered by default. Notice of the hearing on the motion within twenty-four hours was inadequate, especially where the sheriff's return disclosed that no officer was present within the state, and where the testimony disclosed that a telephone call from the resident agent to the president of the company to notify him of the hearing failed to reach him. A notice to be valid must reasonably afford an opportunity to the adverse party to be present and be heard. (See *Mallory v. Leiby,* 1 Kan. 97; and 12 Am. Jur., Constitutional Law, § 600, p. 296.)

Relative to the hearing on the motion for the appointment of a receiver, we think it may be said the proceeding was *ex parte,* there being no appearance by the appellant and the notice being inadequate. Under these circumstances should the trial court have required the appellee to post a bond?

G. S. 1949, 60-1208 provides:

"Whenever an *ex parte* application is made by a plaintiff in a civil action to any court or judge thereof, at or after the commencement of said action, for the appointment of a receiver therein, the court or judge to whom said application is made, may require from the applicant before making the order, an undertaking with sufficient sureties in an amount to be fixed by said court or judge to the effect that the applicant will pay to the defendant all damages he

may sustain by reason of the appointment of such receiver, in case such applicant shall procure such order, wrongfully, maliciously, or without sufficient cause, and the court or said judge may in its discretion at any time after said appointment require an additional undertaking or additional security for costs. *This act shall not apply where the party defendant is a nonresident or where the party plaintiff is the state of Kansas or a municipality of the state."* (Emphasis added.)

The appellant argues that while this statute contains an exception as to "nonresidents" that term does not include "foreign corporations;" that when the legislature intends to include foreign corporations it does so expressly and uses both terms, "nonresident" and "foreign corporation" rather than using one as a blanket term.

We think the appellant's interpretation of 60-1208, *supra,* is too narrow. The requirement of a bond under the provisions of this statute does not apply where the *party defendant* is a nonresident. The party defendant in this case is a corporation, and we construe the term "nonresident" to be descriptive of this "party defendant." Therefore, despite the fact that the hearing on the motion may be said to have been *ex parte,* the trial court was not required to exact a bond from the appellee in the order appointing the receiver as a jurisdictional requisite. The trial court did, however, require that the receiver post a bond in the sum of $20,000.

An analogous situation was presented in *O'Laughlin v. Prockish,* 106 Kan. 616, 189 Pac. 383, except that the court was not confronted with a foreign corporation. There the application for the appointment of a receiver alleged that the defendants were occupying the improvements on the plaintiff's farm and claiming the right to harvest the crop of wheat growing thereon, and were unlawfully keeping him out of possession to which the plaintiff was immediately entitled. After the filing of the petition a receiver was appointed in an *ex parte* proceeding and the receiver posted bond. The order of appointment and the summons were served upon the defendants two days later. Thereafter the defendants appeared generally and moved to set aside the order of appointment. It was said this gave the court which acted thereon in term time full jurisdiction. In the opinion the court continued:

"While a notice and opportunity to be heard should have been granted the defendants, the order of appointment was not void for lack thereof, which lack could have been and was availed of on motion to discharge, which motion seems to have been unsupported by substantial evidence.

"Section 272a of the civil code requires that upon appointing a receiver the applicant may be required to give an undertaking with sufficient sureties in an

amount to be fixed by the court or judge for the payment to the defendant of all damages he may sustain by reason of the appointment should the order be made wrongfully or without sufficient cause. (Gen. Stat. 1915, § 7171.) This precise kind of a bond was not required, but one much more favorable to the defendants was required and given, and the failure to exercise the power given by this section of the code was not sufficient ground for holding the appointment void or for setting it aside." (pp. 619, 620.)

It is generally recognized that a receivership is not authorized where other adequate remedies exist. (*Conwell v. Lowrance*, 46 Kan. 83, 26 Pac. 461.) In *Browning v. Blair*, 169 Kan. 139, 218 P. 2d 233, it was said:

". . . It is only in cases of the greatest emergency that courts are warranted in tying up a business or property by appointing a receiver to take it from the control of the owners; neither should a receiver be appointed unless it is absolutely necessary and there is no other adequate remedy. . . ." (p. 145.)

Cases of this type turn largely upon the factual situations presented. Thus, in *State, ex rel., v. Hutchinson Gas Co.*, 125 Kan. 337, 264 Pac. 44, in a suit involving the mismanagement of a local subsidiary of a foreign corporation, the court held that it was an abuse of discretion on the part of the trial court to appoint a receiver to take charge of the defendant before issues were joined and the case tried.

However, we do not think the Kansas courts are powerless to protect the creditors of a local firm, as here, in the face of uncontroverted evidence by the bookkeeper and office manager, and by the former manager of the firm, which discloses that the assets of the local firm are being dissipated to a foreign jurisdiction, thus giving rise to a situation whereby the Kansas creditors of the local firm were not being paid and satisfied, although proper management would have enabled this to be done.

The appellant takes the position that other remedies exist, and argues that the appellee had a plain, speedy and adequate remedy by attachment or garnishment. (G. S. 1949, 60-901(1); 60-940 and 60-942.)

By the provisions of G. S. 1949, 60-1201, a district court is authorized to appoint a receiver "*Fifth*. . . . when a corporation . . . is insolvent, or in imminent danger of insolvency," or "*Sixth*. In all other cases where receivers have heretofore been appointed by the usages of the courts of equity."

It has been said that courts of equity are not required to withhold or postpone the exercise of their inherent power to do justice

until a corporation has been completely wrecked by insolvency due to unfaithful, unlawful and corrupt practices of officers in control. In equity impossibility of attaining corporate objects is as good a ground for putting an end to operations as inevitable insolvency. (*Bowen v. Flour Mills Corporation,* 114 Kan. 95, 100, 217 Pac. 301, 43 A. L. R. 238; *Jordan v. Austin Securities Co.,* 142 Kan. 631, 51 P. 2d 38; and *Geiman-Herthel Furniture Co. v. Geiman,* 160 Kan. 346, 355, 161 P. 2d 504.)

Although we recognize the cases cited in the foregoing paragraph concerned suits initiated by stockholders, this in no way detracts from the inherent power of a court of equity.

By the provisions of G. S. 1949, 17-505, any corporation recognized under the laws of another state, and authorized to do business in this state, "shall be subject to the same provisions, *judicial control,* restrictions, and penalties, except as herein provided, as corporations organized under the laws of this state." (Emphasis added.)

The appellant argues that no grounds for receivership were proved at the hearing. It contends no claim was made that there was any danger to the land, plant and equipment of the company. This argument goes beyond the record. One may ask what land, plant or equipment, since the record is devoid of any mention of these items. To allay this element of speculation, assuming the appointment of the receiver to be valid, the appellant was required to proceed upon its motion to vacate the appointment. (*O'Laughlin v. Prockish,* supra.)

The appellant asserts with some vigor that a division of a corporation cannot be insolvent. The appellant says:

"Plaintiff appears to claim that the absence of interdepartmental credit renders a local, operating unit insolvent. This claim is wrong. 'The bookkeeping liability of a corporation . . . is not a feature in determining solvency, which refers to ability to satisfy creditors.' *Inscho v. Development Co.,* 94 Kan. 370, 390, 146 Pac. 1014. 'A person is insolvent when his assets at a fair market value are not sufficient to pay his liabilities.' *Avery v. Moore,* 87 Kan. 337, 124 Pac. 173. A 'division' of a corporation is a 'local operating unit.' Webster, *Unabridged Dictionary.* A part of a person cannot be insolvent. Solvency or insolvency has no meaning in relation to departments of an enterprise, although doubtlessly internal, cost accounting will keep tabs on the efficiency of each department. The consolidated books of the company will, however, disregard these items of credit and debit to departments."

The appellant further argues that any accounting text will show that if a profit is tacked onto an interdepartmental "sale" the result is an unrealized profit. It contends the testimony as to "charge-

offs" has no meaning simply because no debtor-creditor relationship exists between a division and the company as a whole, and that the charge-off of interdepartmental accounts is simply their elimination from the consolidated books of the company, which is what good accounting practice demands. The appellant contends management difficulties arise from causes which a general unsecured creditor may not assert, citing *Pratt v. Mutual Life Ins. Co. of N. Y.,* 157 Kan. 710, 145 P. 2d 113.

The trial court in the instant case did not undertake to appoint a receiver for a foreign corporation. It did not seek to interfere in the internal affairs of a foreign corporation. It simply directed the receiver to take over the business of the foreign corporation *in Kansas* and to thus stop the dissipation of assets and mismanagement which threaten to result in the complete bankruptcy of the concern to the detriment of local creditors. Here the trial court made no attempt to exercise jurisdiction over the assets of the appellant located in any other state. The distinction is clearly stated in 17 Fletcher Cyclopedia Corporations [1960 Rev. Ed.], § 8555:

"There is a radical distinction between the appointment of a general receiver for a foreign corporation, and the appointment of a receiver merely of its assets and property within the state. The authorities, while denying the power to appoint such general receiver, agree that chancery has jurisdiction to prevent the dissipation and misapplication of assets of the foreign corporation within the state, and if necessary, to appoint a receiver of such assets, to the end that a just and equitable distribution thereof among creditors and persons entitled thereto may be had. Although the power to appoint a receiver for such purpose is sometimes expressly given by statute, the courts would possess the power without any statute, it being inherent in them as courts of chancery. . . ."

A similar statement is made in 45 Am. Jur., Receivers, § 73, p. 68, as follows:

"A receiver of the assets of a foreign corporation, as distinguished from a receiver of the corporation, will be appointed to prevent waste or dispersion of the assets, whether or not a domiciliary receiver has been appointed. Thus, *where the officers of a foreign corporation are recklessly and extravagantly managing its affairs,* involving it in debt, *and converting its property to their own use,* . . . the interposition of a court of equity and the *appointment of a receiver are proper.* . . ." (Emphasis added.)

The evidence in the case at bar falls precisely under the rule above stated. The president of this foreign corporation was taking the production of the local firm for his own use and benefit, paying little or nothing for it, charging off the indebtedness created and

letting the Kansas creditors go begging for their accounts. The judicial control exercised in this instance was to appoint a receiver who could take charge of the property of the appellant in Kansas and operate it without the dissipation of assets and waste, which was so clearly shown to exist. This would permit the payment of creditors who had extended credit to the local concern. Clearly, a domestic corporation would have been subject to such control and no good reason exists why a foreign corporation should be immune from similar control. (See 45 Am. Jur., Receivers, § 69, pp. 65, 66.)

The mere existence of a remedy at law is not enough to prevent the appointment of a receiver. It must appear that such remedy is adequate, and the question as to when there is another adequate remedy is sometimes difficult to determine. Other relief may be unavailing because the assets have been transferred out of the state and beyond the jurisdiction of the court, or because the officers of the corporation are nonresidents of the state and beyond the jurisdiction of the court. (16 Fletcher Cyclopedia Corporations [1942 Rev. Ed.], § 7729.)

In *State Bank v. Elevator and Mercantile Co.,* 116 Kan. 550, 227 Pac. 257, it was held that a court has jurisdiction to appoint a receiver in an action on promissory notes by an individual plaintiff, where a verified application for such appointment alleges the defendant to be insolvent and there is imminent danger of plaintiff's claim being lost. In the course of the opinion the court stated:

". . . Under the circumstances, the appointment of a receiver to preserve the assets of the defendant for the benefit of all the creditors was proper. The allegations of plaintiff's application that the defendant was insolvent were sufficient to give the court jurisdiction to make the appointment. . . . The receiver was appointed because of the admitted insolvency of the defendant. . . ." (p. 551.)

This court in receivership cases has previously held that the appointment of a receiver rests so largely in the judicial discretion of the trial court that this court will not disturb its judgment unless it is evident that reasonable discretion has been abused. (*Fluker v. City Rly. Co.,* 48 Kan. 577, 30 Pac. 18; *Nelson v. United Elevators Co.,* 115 Kan. 567, 570, 223 Pac. 814; *Jordan v. Austin Securities Co.,* 142 Kan. 631, 664, 51 P. 2d 38; *Heier v. Heier,* 179 Kan. 561, 296 P. 2d 1095; and authorities therein cited.)

On the record here presented we cannot say the appointment of a receiver for the Silverdale Cut Stone Company, a division of For-

burger Company, Inc., amounted to an abuse of discretion by the trial court. This action was within the realm of judicial discretion on a matter over which the court had jurisdiction. The principal place of business was in Silverdale, Cowley County, Kansas, and it was at this place that the manufacturing operation was carried on; it was at this place that the books and records were kept; and it was at this place that the debts of the company were contracted and the receivables owing the company were payable.

Inasmuch as the trial court had jurisdiction over the subject matter and the parties, and did not abuse the exercise of judicial discretion by its action in appointing a receiver, it was incumbent upon the appellant, if it was not satisfied with the factual situation presented at the hearing for the appointment of a receiver on March 22, 1961, or the findings of the trial court, to proceed by affirmative action on its motion to vacate the appointment of the receiver filed the 28th day of March, 1961. As the record now stands this court cannot supply the facts which the appellant would like to assert for a reversal of the trial court on appeal.

Finally the appellant contends an operating receivership of a foreign corporation is illegal. It is argued this case is not one merely to sequester assets of a foreign corporation to protect local creditors; and that the trial court's order actually requires the creation of further indebtedness by the operation of the business.

As heretofore stated the trial court did not undertake to appoint a receiver for a foreign corporation. It did not seek to interfere in the internal affairs of a foreign corporation, in the sense that the court was speaking in *Pratt v. Mutual Life Ins. Co. of N. Y.*, supra. It simply directed the receiver to take over the business and affairs of the foreign corporation *in Kansas*. Prior to making its order the trial court found the appointment of a receiver of the Silverdale Cut Stone Company, a division of Forburger Company, Inc., was necessary *"in order to pay the debts of said firm, to conserve its assets, to wind up the business and affairs of said company, and to take such other and further action as shall be directed and ordered by the court from time to time."* (Emphasis added.)

We construe the scope of the trial court's order to be *premised* upon the above finding. Conservation of the assets taken over by the receiver, particularly raw products in the state of being processed, may require further processing to make them marketable. Clearly the trial court retained jurisdiction to control the activity of the

receiver. The order made by the trial court, as we construe it, was within its power of discretion.

At this stage of the proceeding the rules in *Browning v. Blair,* supra, for the appointment of a receiver have been met.

The judgment of the trial court is affirmed.