KIRBY ROYALTIES, INC., a Corporation, Appellant (Defendant below),

and

State of Wyoming, per se, and State of Wyoming, acting by and through the Board of Land Commissioners, Appellant (Intervenor below),

v.

TEXACO INC., a Corporation, Appellee (Plaintiff below).

No. 3748.

Supreme Court of Wyoming.

Aug. 27, 1969.

K. W. Keldsen, Rawlins, Sterling A. Case, First Asst. Atty. Gen., Cheyenne, for appellant.

Houston G. Williams and Geo. M. Porter of Wehrli & Williams, Casper, for appellee.

Before GRAY, C. J., and McINTYRE and McEWAN, JJ.

Justice McINTYRE delivered the opinion of the court.

Texaco Inc. brought an action to quiet title to the minerals in 80 acres of land in Carbon County, Wyoming. Kirby Royalties, Inc., was named as a defendant. The State of Wyoming, through its Board of Land Commissioners, has intervened. The district court found for Texaco and held it was the owner of the oil, gas and other minerals in the subject lands and entitled to the possession thereof as against Kirby and the State of Wyoming.

Most of the pertinent facts were set forth in a stipulation of facts filed by the parties; and there seems to be no material dispute as to what the facts are.

The common source of title which all parties recognize is the Carbon Oil Company. It received a quitclaim deed for the minerals involved, in 1929, from E. N. Munson. Carbon Oil Company was incorporated in 1925 in the State of Nebraska. Its authorized capital stock was $10,000 divided into 100 shares with a par value of $100 each.

An annual report for the corporation filed with the Nebraska Secretary of State on June 9, 1926 reported $10,000 in capital stock was authorized, paid up and issued. However, the next annual report, filed July 13, 1927, reported $10,000 of stock authorized and no stock paid or issued. A notation in this report indicated oil rights in lands were to be acquired; that incorporators had been delayed in acquiring title to the lands and so no stock had been issued. The next annual report, filed June 2, 1928, reported the titles to lands were still in court and incorporators had not succeeded in completing the litigation; that when litigation was completed they would get the title and issue the stock.

The annual reports for 1929 and 1930 were both filed January 6, 1931. These reports showed the president of the company to be E. N. Munson and the secretary and treasurer to be C. C. Johnson. The directors were shown to be E. N. Munson, B. F. Roth and C. C. Johnson. These reports stated the authorized capital stock was $10,000. The amount subscribed, issued and outstanding and paid up was marked $10,000. The nature of the business of the corporation was designated as "holding title to some mineral lands."

Parties have stipulated that Carbon Oil Company was dissolved by the Secretary of State of the State of Nebraska for nonpayment of taxes on March 23, 1933. The persons comprising the last board of directors of the corporation, according to the last annual report, were E. N. Munson, C. C. Johnson and B. F. Roth. All of these directors are deceased and the last survivor was B. F. Roth who died January 13, 1946.

Undisputed evidence shows that a diligent search has been made for stock in Carbon Oil Company; for the owners or holders of such stock; for former officers or directors of the corporation; for heirs or successors to any of the former officers or directors; and for creditors, if any. All that could be found was Eliza I. (Isabelle) Roth, widow and sole heir and beneficiary of B. F. Roth. She had possession of Certificate No. 4 dated January 28, 1929 for ten shares of stock in Carbon Oil Company. The certificate had been issued to B. F. Roth. No other stock or stockholders have been found despite a diligent search for such.

On the basis of the evidence adduced and stipulated to, a total of 100 shares ($10,000 in value) of stock in Carbon Oil Company was issued and became outstanding; Roth owned ten shares or one-tenth of the total outstanding stock; and title to such stock passed to his widow, Eliza I. (Isabelle) Roth. There are no known owners as far as nine-tenths of the stock is concerned.

In 1961 Thomas F. Stroock, acting for Texaco Inc., took two quitclaim deeds from Mrs. Roth, individually and as trustee for creditors and stockholders of Carbon Oil Company, covering all minerals in the lands we are concerned with. He then conveyed over to Texaco. The consideration paid by Stroock to Mrs. Roth was $7.50 per acre.

On the theory that Mrs. Roth had become successor trustee for creditors and stockholders of Carbon Oil Company, after the death of her husband, or that she succeeded to the legal title—subject to a trust for all creditors and stockholders—Texaco claims to be the owner of the property we are dealing with.

In 1966 Mrs. Roth, as the widow and sole heir of B. F. Roth, executed an assignment and a bill of sale by which she purported to sell, transfer and convey to Kirby Royalties, Inc., all of her right, title and interest

in and to the ten shares of stock Roth had owned in Carbon Oil Company.

In 1964 the State of Wyoming issued, without warranty, an oil and gas lease on the 80 acres here involved to Kirby Royalties, Inc. The state's claim of ownership is based on the theory that the minerals in the land had escheated to the State of Wyoming because they did not belong to any person or persons. Kirby therefore claims an interest, as lessee of the state, in and to the oil and gas contained in the land. In addition, it claims under whatever rights it may have obtained, if any, on account of its assignment and bill of sale from Mrs. Roth pertaining to Stock Certificate No. 4.

### Nebraska and Wyoming Statutes

Opposing counsel have argued rather pointedly over whether the statutes of Nebraska or the statutes of Wyoming apply with respect to who acts as trustee for creditors and stockholders of the dissolved corporation Carbon Oil Company.

On behalf of Kirby it is argued the Nebraska law applies; and the applicable statute in effect when the corporation was dissolved was § 24-107, Compiled Statutes, Nebraska, 1929. This statute provides the directors or managers of the affairs of the corporation, acting last before the time of its dissolution, and the survivors of them, shall be the trustees of the creditors and stockholders of the corporation dissolved. The statute specifies that in case of the death, resignation, inability or refusal to act, of such directors or managers or the survivors thereof, the district court of the proper county may, on the application of any persons interested, appoint trustees to fill the vacancy.

On behalf of Texaco the argument is that Wyoming law applies; and the applicable statute in effect when the corporation was dissolved was § 44-1101, Wyoming Compiled Statutes 1945. The statute is essentially the same as § 24-107 of Nebraska, except it does not have the provision for a

court to appoint a successor after the last survivor of the last directors has died.

That, Texaco argues, is the critical difference. Since the Wyoming statute does not provide for a successor after the last survivor dies, the argument is, the common law would apply; and it is claimed that under the common law the trust devolves upon the heirs of the last trustee.

When the last survivor of the last directors of Carbon Oil Company died, Wyoming corporation law was not materially different from Nebraska law, insofar as provisions for trustees of a dissolved corporation are concerned.

Section 44-1107, Wyoming Compiled Statutes 1945, which was a part of the same act as § 44-1101, specified nothing in the act shall be construed to impair the power of any court of competent jurisdiction to appoint receivers or trustees to settle the affairs of any corporations dissolved. It also specified all trustees or managers of any corporation, acting after dissolution of the corporation, shall in all things be subject to control of the court.

These provisions could only apply, however, to dissolved Wyoming corporations for the reason that courts of this state cannot dissolve or supervise the dissolution of a foreign corporation. Such power is vested solely in the courts of the state wherein the corporation was organized.

The rule is well expressed in 36 Am. Jur.2d, Foreign Corporations, § 448, p. 455, in these words:

"Applying the established rule that courts will not take jurisdiction of the internal affairs of a foreign corporation, courts of a state other than the state of incorporation are, as a rule, held to have no jurisdiction to appoint a receiver with power to liquidate the affairs of such a corporation, even though they may appoint a receiver of assets of the corporation * * *."

In Clark v. Williard, 292 U.S. 112, 54 S.Ct. 615, 619, 78 L.Ed. 1160, Justice Cardozo said the title of a corporate statutory

trustee is the consequence of a succession established for the corporation "by the law of its creation."

In 17 Fletcher Cyclopedia Corporations, § 8555, p. 844 (Permanent Edition), it is stated there is a radical distinction between the appointment of a general receiver for a foreign corporation, and the appointment of a receiver merely of its assets and property within the state. As explained in this text, the authorities, while denying the power to appoint such general receiver, agree that chancery has jurisdiction to prevent the dissipation and misapplication of assets of the foreign corporation within the state, and if necessary, to appoint a receiver of such assets, to the end that a just and equitable distribution thereof among creditors and persons entitled thereto may be had. See Jacobson-Lyons Stone Company v. Silverdale Cut Stone Company, 189 Kan. 511, 370 P.2d 68, 76, where the text we refer to was quoted and followed.

Section 1–990, W.S.1957, authorizes the appointment of receivers by district courts or district judges in all cases where receivers prior to the act had been appointed by usages of courts of equity. Thus, it is clear a receiver, on proper application therefor, could have been appointed in Wyoming for preservation and distribution of assets of Carbon Oil Company in Wyoming. But no such receiver was ever requested and none was appointed.

As far as a general statutory trustee for Carbon Oil Company is concerned, Texaco is obliged to look to Nebraska law. Such law, at the time pertinent, specified a successor trustee could be appointed by the district court of the proper county. But none was asked for and none was appointed. As far as a receiver or trustee for the assets in Wyoming is concerned, we have already indicated none was asked for and none was appointed. It follows then, that Mrs. Roth was not a statutory or appointed trustee under Nebraska law; and she had no status as a trustee or receiver in Wyoming for assets in this state.

We do not accept the theory of Texaco that the common law rule which it stands upon should be applied in this case. And we find no basis for saying Mrs. Roth, without a court appointment in either Nebraska or Wyoming, became a trustee for creditors and stockholders of Carbon Oil Company.

### Status of Stockholders

■ It is the general rule that at dissolution of a corporation the equitable title to the distributive shares vests in the respective shareholders; and the unclaimed distributive shares are not available for distribution to the known shareholders. State by Parsons v. Fidelity Union Trust Company, 25 N.J. 387, 136 A.2d 636, 641; Realty Associates of Portland, Oregon v. Women's Club, 230 Or. 481, 369 P.2d 747, 753; Smith v. Long, 76 Idaho 265, 281 P.2d 483, 486; In re Monks Club, Inc., 64 Wash.2d 845, 394 P.2d 804, 807.

■ As stated in the Fidelity Union Trust Company case cited in the preceding paragraph, it is a necessary implication that assets of a dissolved corporation must be held in trust until such time as they are claimed by the owners or escheated by the state under an appropriate escheat act. It is pointed out in that opinion that the proprietary interest of each stockholder is, at dissolution, transformed into an equitable right to a pro rata distributive share of the assets of the corporation.

Also, in Ban-Mac, Inc. v. King County, 69 Wash.2d 49, 416 P.2d 694, 695, it is recognized that in the absence of statute the *legal* title to property belonging to a corporation passes by operation of law, upon dissolution of the corporation, to the stockholders, who are the beneficial owners and who take as tenants in common. And in Reuter v. Mobile Building and Construction Trades Council, 274 Ala. 614, 150 So.2d 699, 702, it is said, where a corporation has been dissolved and there has been no distribution of corporate assets, title to realty be-

comes vested in the shareholders as tenants in common.[1]

### Wyoming's Escheat Statutes

Section 9–686, W.S.1957, provides:

"The original and ultimate right of all property, real and personal, within the limits of this state, is in the people thereof."

Section 9–687, W.S.1957, states:

"All property, real and personal, within the limits of this state, which does not belong to any person, belongs to the state. Whenever the title to any property fails for want of legal heirs, it reverts to the state."

Subsection (a) of § 9–688, W.S.1957, 1969 Cum.Supp., as amended, provides whenever property shall escheat or be forfeited to the state for its use, the legal title shall be deemed to be in the state from the time of the escheat or forfeiture, and an information may be filed by the state in the district court of the proper county.

Section 9–688(a) makes it clear that, in any such action, due proof that any real or personal property, "or property of whatsoever character," has been unclaimed for a period of five years prior to filing the information and that the name or whereabouts of the owner is unknown shall be deemed prima facie evidence of the failure of title to such property for want of legal heirs.

With respect to the equity involved in Wyoming's escheat statutes, we call attention to the fact that in addition to proof that the property has been unclaimed for five years, subsection (d) of § 9–688 requires the state to hold all escheated property in trust for five more years, during which time it shall be subject to claims of the rightful owner or owners.

Appellee-Texaco contends corporate property is not subject to escheat because § 9–687 applies only to property which does not belong to any "person"; and because a corporation cannot have "legal heirs" as required in § 9–687.

We are unimpressed with this contention. Not only is the word "person" as used in this statute broad enough to apply to property which does not belong to any corporation, but we have already said the proprietary interest of each stockholder is, at dissolution, transformed into an equitable right to a pro rata distributive share of the assets of the corporation. Thus, the property being escheated is property of the shareholders.

Sections 9–686, 9–687 and 9–688 must necessarily be read in *pari materia*. When so read, it is apparent the sections apply to "all property" as used in § 9–687 and to "property of whatsoever character" as used in § 9–688(a). This would include property of corporations and individuals.

■ It is also apparent the legislature intended the sections to apply whenever title to any property fails for want of owners, and the term "legal heirs" as used in § 9–687 can be construed to mean successors in interest. The last sentence in § 9–688(a) is sufficient verification that the legislature so intended. It expressly states proof that any property has been unclaimed for a period of five years shall be deemed prima facie evidence of the failure of title to such property for want of legal heirs.

### The Roth Interest

The last quitclaim deed taken by Stroock from Mrs. Roth was taken from her as the successor trustee of B. F. Roth and as the sole statutory trustee. However, the first quitclaim deed shows on its face that it was taken from her both "individually" and as statutory trustee. It was prior in point of time to the assignment and bill of sale from Mrs. Roth to Kirby for Stock Certificate No. 4.

1. See 19 Am.Jur.2d Corporations, § 1660, p. 1008.

In view of our holding that the proprietary interest of each stockholder is, at dissolution, transformed into an equitable right to a pro rata distributive share of the assets of the corporation, we see no reason why the deed from Mrs. Roth individually to Stroock did not convey to him all of the right, title and interest of grantor in and to the minerals herein involved. That interest is now owned by Texaco. We have previously indicated this Texaco interest would be one-tenth of the minerals in the land in question.

The remaining interest, being unclaimed by the rightful owners, escheats to the State of Wyoming, subject to the holding provisions set forth in § 9–688(d). The fact that a partial interest only escheats to the state presents no problem. See In re Brown's Estate, 168 Kan. 612, 215 P.2d 203, 207.

## SUMMARY

Texaco, as plaintiff in a quiet title action, has the burden of proof and must stand on the strength of its own title and not on the weakness of the title of defendants. Hudson v. Erickson, 67 Wyo. 167, 216 P.2d 379, 385. What has been proved is that Texaco is owner of an undivided one-tenth interest in the minerals in the 80 acres involved in this suit.

Accordingly, the judgment of the district court must be modified to quiet the title of plaintiff to an undivided one-tenth interest in such minerals, with judgment for the defendants, Kirby and the State of Wyoming, with respect to the remaining nine-tenths interest.

Remanded for such modification.

PARKER. J., not participating.